No. 38,977

WILLIAM B. NOEL, by his wife and next friend, Mrs. W. B. Noel, *Appellee*, v. ALBERT E. McCAIG, doing business as McCAIG PLUMBING COMPANY, *Appellant*.

(258 P. 2d 234)

Opinion filed June 6, 1953.

*James E. Smith*, of Topeka, argued the cause and *Harry W. Colmery, Arthur L. Claussen* and *E. Edward Johnson*, all of Topeka, were with him on the briefs for the appellant.

*James W. Porter*, of Topeka, argued the cause and *T. M. Lillard, O. B. Eidson, Philip H. Lewis*, and *Charles S. Fisher, Jr.*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages alleged to have been sustained when a truck being driven by an agent of one of the defendants struck the plaintiff. The appeal is from an order overruling the demurrer of one of the defendants to the petition. That defendant has appealed.

The action was brought against the Menninger Foundation, a corporation, and Albert McCaig, doing business as the McCaig Plumbing Company. This appeal is by McCaig.

On account of a motion to make definite and certain and to strike that was leveled at this petition and the argument of defendant, the paragraph numbers are set out in parenthesis.

The petition alleged that Noel was not capable of managing his own affairs; had not been adjudged to be incompetent and had no legally appointed guardian and the action was brought by his wife as his next friend.

For his cause of action, plaintiff alleged (1) his address was Shreveport, La.; (2) that defendant Menninger Foundation was a corporation under the laws of Kansas and was operating a hospital licensed under G. S. 1949, 65-404; (3) that McCaig was conducting a plumbing business in Topeka under the firm name of the McCaig Plumbing Company; (4) that about March 13, 1951, plaintiff made application for admission to the hospital for treatment as a mental patient; (5) that he was accepted and was from March 13, 1951, until April 4, 1951, a patient thereat; the admission of plaintiff for treatment was under the provisions of G. S. 1949, 65-404, and the hospital was fully advised that plaintiff's condition was such that he needed and defendant hospital assumed the duty and obligation of furnishing to him the restraint necessary to be accorded him as a person not in normal mental condition; (6) that upon his acceptance as a patient plaintiff was required to pay $25 a day and other charges for various tests and the total charges against plaintiff from March 13, 1951, to April 4, 1951, amounted to $1,106.35; (7) that at all times plaintiff was a confined patient who was at no time permitted to depart from the hospital building except under the care, control and restraint of an attendant; (8) that on or about April 4, 1951, at about 3:30 p. m. plaintiff while in the custody of an agent of the hospital, contrary to hospital rules, was taken by his attendant, an agent of the hospital, in front of the hospital's main building in a northerly direction to the end of the cement walk, which extends northerly and comes to an end at the edge of that portion of the hospital grounds which lies on the south side of the highway; (9) that while plaintiff and his attendant stood at that point, which was the regular crossing place for pedestrians who desired to cross the highway, plaintiff expressed to his attendant a desire to cross the highway where the north section of the hospital grounds was located, including the hospital doctors' offices. The highway where they stood was known as West Sixth Street in Topeka and U. S. Highway 40 and was a heavily traveled highway; (10) that the act

of the hospital's agent in taking plaintiff to the place designated for the use of pedestrians in crossing the highway and in failing to restrain plaintiff after he had expressed a desire to cross the highway were negligent acts and omissions of duty whereby plaintiff was exposed to an abnormal and wrongful hazard. Thereupon the plaintiff who was by reason of his mental infirmities (as was well known, or in the exercise of reasonable care and caution should have been known to the hospital and to its agent) unable to understand the hazards of so doing, attempted to cross the highway at that point; (11) that as he reached the traveled portion of the highway he was struck and knocked to the ground by an eastbound truck of the defendant, McCaig Plumbing Company, which was being driven by an agent of that company in and about the business of the company. The truck was being operated negligently in that the yellow flasher light was in operation at the point where plaintiff was struck. This paragraph then contained the following allegations:

McCaig Plumbing Company, and its said agent, servant and employee, well knew, or should have known, that said flasher light was provided as and constituted a warning to operators of motor vehicles to reduce speed below the maximum speed authorized by city ordinance, and to have any vehicle traveling at that point under such control that it could be quickly stopped. The location of the hospital on the highway, and the nature and character of the hospital, together with the fact that hospital buildings are on both sides of the street, making it necessary for psychiatric patients and hospital personnel to cross the street at this point, are matters of common knowledge to all residents of the City of Topeka, and were well known, or should have been well known, to the defendant, McCaig Plumbing Company, and its said agent, servant and employee."

The petition then alleged that an ordinance of the city fixed the maximum speed in the city at thirty miles an hour and further provided that (e) "No person shall drive a vehicle in the city of Topeka at a speed greater than is reasonable and prudent under the conditions then existing irrespective of the maximum speeds hereinbefore set forth." The truck was at the time it struck the plaintiff being driven at a speed between thirty and thirty-five miles an hour, which was a high, dangerous and unlawful rate of speed under the conditions existing at the time, and the McCaig Company and its agent failed to keep a proper lookout for pedestrians entering the street and failed to have its truck under such control that it could be quickly stopped; (12) that as a result of being struck by the truck plaintiff, who was seventy-one years of age,

was permanently injured and disabled for life and suffered great pain for many weeks and one leg was two inches shorter than the other leg; (13) plaintiff's injuries were directly and proximately caused by the negligence of the Menninger Foundation operating jointly and concurrently with the negligence of defendant, the Mc-Caig Plumbing Company; (14) that in the care and treatment of his injuries plaintiff had already incurred expenses in excess of $5,000 for nursing, services of physicians and surgeons, for therapeutic treatments, for transportation and other expenses and would incur additional expenses in the future; that plaintiff's pain and suffering and the impairment of his nervous system resulting from these injuries had continued to the date of filing the petition and would continue in the future, all to his damage in the amount of $25,000.

Judgment was prayed in that amount.

To this petition the defendant, the McCaig Plumbing Company, leveled a motion to make definite and certain and also a motion to strike. The motion to make definite and certain asked that the plaintiff state the "abnormal and wrongful hazard" to which he was exposed by the negligent acts of the hospital as alleged in paragraph 10; that he be required to state the character and extent of the "mental infirmities" which rendered him unable to appreciate these hazards and dangers of crossing the highway at the point alleged in paragraph 10 and whether these infirmities included suicidal tendencies; by stating the facts surrounding the collision of the truck with plaintiff so as to enable the court and McCaig to determine how plaintiff claimed the accident happened, and to state where plaintiff and his attendant were standing with reference to the south edge of the "traveled portion of the highway" when plaintiff expressed a desire to cross the highway; the width of the traveled portion of the highway referred to in paragraph 11, where with reference to the "yellow flasher light" in feet east or west did plaintiff attempt to cross the highway, as alleged in paragraph 11; how far west defendant's truck was at the time plaintiff started to cross the street, as alleged in paragraph 11, and where plaintiff was with reference to the south edge of the traveled portion of the highway at that time; whether plaintiff looked to the west for approaching traffic before entering upon the traveled portion of the highway, as alleged in paragraph 11; by stating the nature and character of the conditions existing at the time and place alleged in paragraph 11; by stating the nature and location of the

severe bruises and lacerations upon other portions of plaintiff's body alleged in paragraph 12; by stating what "injury" sustained by plaintiff was permanent and would disable him for life, as alleged in paragraph 12; by stating what act or acts of negligence of McCaig, the plaintiff claims operated jointly and concurrently with the negligence of the Menninger Foundation to directly and proximately cause the injuries to plaintiff, as alleged in paragraph 13, and the specific negligence of defendant hospital referred to as "hereinbefore alleged" and by stating what expenditures were made by plaintiff for transportation and other expenses caused by said injuries, as alleged in paragraph 14.

In the motion to strike the defendant, McCaig Plumbing Company, asked that the court strike from the petition that part of the language of paragraph 11 of the petition, which has already been quoted in this opinion.

The trial court sustained the motion to strike and sustained paragraph 1 of the motion to make definite and certain, that is, where the defendant asked that the plaintiff be directed to state the character of the abnormal and wrongful hazards to which plaintiff was exposed by the negligent acts of the Menninger Foundation, as alleged in paragraph 10, and the paragraph where defendant asked that plaintiff state what injury was permanent and would disable him for life, as alleged in paragraph 12 of the petition, and paragraph 8 where he was asked to state what expenditures were made by him for transportation and other expenses caused by his injury, as alleged in paragraph 14. Whereupon plaintiff filed an amended petition.

The first five paragraphs of this amended petition were the same as the original petition. Paragraph 6 alleged that at the time the plaintiff was admitted to the hospital he made no inquiry and was not informed that the hospital claimed to be a charitable organization and he had no knowledge as to any claim of defendant that it was or might be exempt or released from liability for any injury or damage to patients. The rest of the amended petition is the same as the original petition until we reach paragraph 12 thereof, which corresponds to paragraph 11 of the original petition. In paragraph 12 of the amended petition he alleged that after he started to cross the street and as he reached the traveled portion of the highway he was struck and knocked to the ground by the truck of the McCaig Plumbing Company, which was being driven or operated by its agent in and about its business and that it was negligently oper-

ated in that at the point of the margin of the street where the plaintiff was struck there had been installed a flashing signal with yellow lens, which was in operation at the time plaintiff was struck. He quoted an ordinance of the city of Topeka as follows:

"Whenever flashing red or yellow signals are used they shall require obedience by vehicular traffic as follows: . . . (2) Flashing yellow (caution signal): When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

And alleged that G. S. 1949, 8-515 is to the same effect. The paragraph further alleged that the provisions of another ordinance of the City of Topeka make the maximum speed of a motor vehicle thirty miles an hour but another section provided—

"(e) No person shall drive a vehicle in the city of Topeka at a speed greater than is reasonable and prudent under the conditions then existing irrespective of the maximum speeds hereinbefore set forth."

and that the driver of the defendant plumbing company's truck negligently failed to obey the provisions of the statute and ordinance with reference to the yellow flashing signals and failed to proceed with caution and on the contrary drove his truck past the signal at the rate of thirty or thirty-five miles an hour, which was a high, dangerous and unlawful rate of speed, in violation of the ordinance, and the statute, and that the plumbing company and its agent were negligent in that they failed to keep a proper lookout for pedestrians entering the street and failed to have the truck under such control that it could be quickly stopped. In paragraph 13 he recited his allegations about his injuries and alleged that the injury to his leg was permanent and would disable him for life because as a result it was two inches shorter than his other leg.

In paragraph 15 he alleged that The Menninger Foundation carried indemnity insurance and paid considerable premiums therefor indemnifying it on claims of the character sued on and its assets would not be diminished or depleted by the payment of any judgment. He set out in detail his expenses for his injuries (doctor bills, nurse expense, hospital bills and transportation expenses) in the amount of $5,088.54.

The defendant, McCaig Plumbing Company, demurred to this petition on the ground that it did not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant. That demurrer was overruled—hence this appeal.

The specifications of error are that the court erred in holding that

the amended petition stated facts sufficient to constitute a cause of action against the appellant; that the court erred against McCaig in holding that the amended petition did not show plaintiff was guilty of contributory negligence and barred from recovery; and that the court erred in overruling the demurrer to the amended petition and holding that the amended petition stated facts sufficient to constitute a cause of action in favor of plaintiff and against the appellant.

Defendant McCaig contends the requests in his motion were meritorious and his motion should be sustained. If this contention be correct, then the amended petition should have been given a strict interpretation. Several authorities are cited to sustain this view. There are cases in our reports where we have held a motion to make definite and certain should have been sustained and the petition given a strict construction, with the result that defendant's demurrer should have been sustained. The fact is, however, every petition must be decided on its own allegations, as we have said in *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 244 P. 2d 228:

"A party may not subject a pleading to strict construction on demurrer by first attacking it with a motion to strike or to make definite and certain when the motion is without substantial merit and is properly overruled."

The true test is stated in *Henderson v. National Mutual Cas. Co.*, 164 Kan. 109, 187 P. 2d 508, as follows:

"The ultimate question, therefore, is whether material portions of petitions challenged by motions to make definite and certain fairly apprised defendants of the nature of plaintiffs' claim. If they did the motions were properly overruled and plaintiffs are entitled to have the third amended petition liberally construed in their favor. On the other hand, if such portions of the petition did not fairly apprise defendants of plaintiffs' claim the third amended petition should be strictly construed against plaintiffs."

The statute provides that the petition must contain

". . . A statement of the facts constituting the cause of action in ordinary and concise language, and without repetition." (G. S. 1949, 60-704 Second.)

On consideration of a motion to compel the plaintiff to make his petition definite and certain the question is whether sufficient facts are stated so as to clearly and fairly advise the defendant of the precise nature of plaintiff's claim. A critical analysis of defendant's motion and the amended petition discloses that as to the negligence of defendant, McCaig, there was no lack of clarity and preciseness

as to what plaintiff claimed the negligence of defendant, McCaig, was. In an action for personal injuries the main function of the petition is to advise defendant as to what negligence plaintiff claims the defendant committed.

These allegations were that when plaintiff was crossing the street at the regular crossing place for pedestrians who desire to cross the highway to go from the hospital buildings on the south side of the street to the doctors' offices on the north side, which point on the highway was protected for pedestrians by the installation of a flashing signal with yellow lense which was in operation at the time plaintiff was struck. Then alleged:

"The driver of the defendant plumbing company's truck negligently failed to obey the provisions of said statute and ordinance with reference to yellow flashing signals and that he failed to proceed at said point with caution, but on the contrary drove the said truck past the said signal at the time it struck the plaintiff at a speed of between 30 and 35 miles per hour, which was a high, dangerous and unlawful rate of speed in violation not only of said Ordinance No. 25-306 and of said flasher statute 8-515, G. S., but was also in violation of said maximum speed ordinance No. 25-517. Said defendant, McCaig Plumbing Company, and its agent, servant and employee, were negligent also in that they failed to keep a proper lookout for pedestrians entering the street and failed to have the truck under such control that it could be quickly stopped."

Certainly the above stated actionable negligence against McCaig admits the weakness of his position when he states in his brief:

"The original petition would have been sufficient as against a demurrer because all inferences and implications would have been resolved in favor of the plaintiff in the absence of a motion to make the petition definite with respect to the circumstances."

There can be no doubt the original petition contained sufficient facts as to the negligence of McCaig. As to that phase of the case, the amended petition is far stronger than the original petition, to which reference was made by defendant above.

It appears defendant sought by his motion to force the plaintiff to make sufficient allegations in his petition in the way of anticipating a defense so that the petition would show on its face the plaintiff was guilty of contributory negligence as a matter of law. We dealt with such a situation in *Clark v. Meyers,* 173 Kan. 96, 244 P. 2d 217, where we said:

"It is not the function of a motion to make a petition definite and certain to compel a plaintiff to allege facts which a defendant believes constitute a defense to the action."

(See, also, *Moffet v. Kansas City Fire & Marine Ins. Co.,* supra.)

Defendant argues that strictly construed the petition shows on its face that plaintiff was guilty of contributory negligence. His argument is that when the petition is subjected to strict construction, the allegation that plaintiff started across the highway with no allegation of an obstruction to his view or that he looked subjects it to a construction that he saw what he could have seen, and either saw the truck, and stepped in front of it, or started across without looking. This argument is not good in view of what we have said about the motion to make definite and certain not being good. The rule is well settled that contributory negligence is an affirmative defense that must be pleaded.

In *Stevens v. Railway Co.*, 84 Kan. 447, 113 Pac. 398, we said:

". . . is not essential to the plaintiff's cause of action that he allege that he could not, in the exercise of reasonable care, have acquired knowledge thereof.

"In such case, if the contributory negligence of the plaintiff is relied upon as a defense, it devolves upon the defendant to allege and prove it."

(See, also, *Jenkins v. Kansas City Public Service Co.*, 127 Kan. 821, 275 Pac. 136; also *K. P. Rly. Co. v. Pointer*, 14 Kan. 37, 50; *K. C. L. & S. Rld. Co. v. Phillibert*, 25 Kan. 582; *S. L. & S. F. Rly. Co. v. Weaver*, 35 Kan. 412, 11 Pac. 408; *Railway Co. v. Peck*, 79 Kan. 413, 100 Pac. 54; and *Altwein v. Street Railway Co.*, 86 Kan. 220, 120 Pac. 550.)

The allegations in this petition as to the mental condition of plaintiff while not essential to the cause of action against McCaig adds force to it on the question whether it showed on its face that plaintiff was guilty of contributory negligence. The rule is stated in 20 R. C. L., 123, as follows:

"Inasmuch as knowledge of the peril is the ground for denying a right of recovery for injuries alleged to be due to negligence, it is obvious that every case must involve an inquiry into the age, experience, and mental capacity of the person injured. If he was so absolutely devoid of intelligence as to be unable to apprehend apparent danger, and to avoid exposure to it, he cannot be said to have been guilty of negligence. Such a person is required to exercise, not the degree of care to which normal persons are bound, but only such as may be expected of one of his mental capacity."

See, also, 38 Am. Jur. 882, where we said:

"Since knowledge and appreciation of the peril are essential elements of contributory negligence, it is obvious that an inquiry into the age, experience, and mental capacity of the plaintiff is material where contributory negligence is invoked as a defense. Evidence is admissible to show what the plaintiff's age, intelligence, and experience were at the time of the injury, and from such evi-

dence and other evidence in the case it is for the jury to determine whether the plaintiff understood and appreciated the danger. Again, the practical capabilities of the plaintiff for self-protection under the particular circumstances involved should be considered in determining whether he exercised due care for his own safety. The fact of a limited intelligence or of a deficiency in physical capabilities must be given weight in determining whether a person thus deficient has been guilty of contributory negligence. . . . a person who is so absolutely devoid of intelligence as to be unable to apprehend apparent danger and to avoid exposure to it cannot be said to be guilty of negligence. . . ."

The allegation is not an element to be considered in establishing McCaig's negligence but it is an element to be considered in determining whether the amended petition showed on its face that plaintiff was guilty of contributory negligence.

The judgment of the trial court is affirmed.