[Civ. No. 19221.   First Dist., Div. Two.   May 24, 1961.]

THADDEUS R. DeMARTINI, Appellant, v. ALEXANDER SANITARIUM, INC. (a Corporation) et al., Respondents.

Vernon W. Humber and Charles Molinari for Appellant.

Lamb & Hoge for Respondents.

STONE, J. pro tem.*—Plaintiff, a dentist of 30 years' experience, filed an action for damages against defendant, Alexander Sanitarium, Inc., a private hospital specializing in the treatment of the mentally disturbed. While a patient at the hospital, plaintiff was injured by climbing a 6-foot wall surrounding the hospital grounds and jumping down on the other side. The jury brought in a defense verdict and plaintiff appeals from the judgment entered thereon.

Plaintiff had been mentally disturbed for several years and he had seen other psychiatrists before consulting Dr. Harter, who was administering to him at the time of the accident. Dr. Harter diagnosed plaintiff's condition as "depressive reaction with some question of an underlying schizophrenic reaction" and recommended shock treatment. Plaintiff had previously undergone shock treatments from which he developed a dread of them and an associated dislike for Stanford Hospital where they had been administered. To overcome plaintiff's aversion to the hospital and allay his anxiety toward shock treatments, Dr. Harter suggested the somewhat informal environment at defendant hospital. He particularly recommended the minimum security facility, a cottage with patio and garden privileges, as did the psychiatrists on defendant's staff. A maximum security unit was also available but considered undesirable by the doctors. Plaintiff and his wife inspected the hospital and notified Dr. Harter of their approval. Under conditions of minimum restraint, plaintiff voluntarily entered the hospital and he was free to sign himself out at any time.

*Assigned by Chairman of Judicial Council.

A doctor on the staff of defendant hospital gave shock treatments to plaintiff pursuant to the orders of Dr. Harter. In the late afternoon of his 10th day at the hospital, plaintiff and several other patients, with a nurse in attendance, were relaxing in the patio area. The nurse went inside the building to get thermometers and while she was gone, plaintiff placed a stool beside the 6-foot wall, climbed on top, and jumped down on the other side, fracturing his ankle. Plaintiff testified that he had no recollection of the occurrence. He had been given a shock treatment the day before but his doctor and the two staff doctors testified that aside from temporary forgetfulness, the electric shock treatment should have caused no ill effects. There was testimony that the treatments should have calmed the plaintiff rather than cause him to impulsively climb over the wall.

### RES IPSA LOQUITUR

The court gave instructions on the doctrine of res ipsa loquitur and also an instruction that ''[t]he mere fact that an accident occurred, considered alone, does not prove that it was caused by the negligence of anyone.'' Plaintiff argues that the instructions are conflicting and that reversible error was committed. As plaintiff points out, the giving of similar instructions has been held to constitute reversible error where the doctrine of res ipsa loquitur was applicable as a matter of law (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897]; *Jensen* v. *Minard*, 44 Cal.2d 325, 329 [282 P.2d 7]). The question is discussed by the Supreme Court in an opinion written by Chief Justice Gibson in *Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266 [347 P.2d 674], and it appears that the error in giving both instructions is reversible when there is a possibility that the ''mere happening'' instruction may nullify the inference of negligence intrinsic to res ipsa loquitur. But it does not follow that giving both instructions per se results in reversible error. Mr. Justice Traynor once said: ''The applicability of the doctrine of res ipsa loquitur cannot be determined in the abstract; it depends upon the evidence in each case.'' (*Dierman* v. *Providence Hospital*, 31 Cal.2d 290, 297 [188 P.2d 12].) A review of the evidence here reflects unusual facts which make inapplicable the reasons for reversible error expressed in the *Alarid* v. *Vanier* and *Jensen* v. *Minard* cases, *supra*. Since plaintiff placed a stool next to the 6-foot wall, climbed on top and jumped down on the other side, injuring himself, he would not appear to be entitled to

the benefit of res ipsa loquitur. He voluntarily committed the act which caused his injury. Plaintiff, however, testified that he had no recollection of the occurrence and presented medical testimony indicating that his act was an irrational one. If this testimony were believed by the jury, then in our opinion, plaintiff would be entitled to the benefit of res ipsa loquitur. We can see no practical reason for distinguishing between a hospital patient without recollection of the events causing his injuries and an unconscious patient who is clearly entitled to the benefit of the doctrine (*Ybarra* v. *Spangard,* 25 Cal.2d 486, 493 [154 P.2d 687, 162 A.L.R. 1258] ; *McDonald* v. *Foster Memorial Hospital,* 170 Cal.App.2d 85, 99 [338 P.2d 607] ). There is evidence, however, indicating that none of the treatment administered plaintiff, including the electric shock, would have caused loss of memory or his unusual behavior. The evidence raised a question as to whether he was accountable for his actions. The jury had to first resolve the conflicting evidence concerning plaintiff's mental condition and determine whether he was responsible for his own actions. Therefore, under the facts peculiar to this case, it cannot be said that plaintiff was entitled to the benefit of res ipsa loquitur from the mere happening of the accident.

Submitting the applicability of res ipsa loquitur to the jury for its determination when a question of fact is presented was approved in *Seneris* v. *Haas,* 45 Cal.2d 811, at page 823 [291 P.2d 915, 53 A.L.R.2d 124], wherein the court said: ". . . we are also of the opinion that the jury, under appropriate instructions, should have been permitted to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur were present (*Roberts* v. *Bank of America,* 97 Cal.App.2d 133, 137 [217 P.2d 129] )."

The trial court complied with the procedure approved in the Seneris case, and considering all of the instructions in the light of the evidence, we do not see how the jury could have been misled by the instruction quoted earlier concerning the mere happening of the accident.

### Contributory Negligence

▪ Plaintiff next contends that he was incapable of negligence as a matter of law and that the jury should have been so instructed. This argument presents a bifurcated attack upon the instructions, urging that the court erred not only in submitting the issue of plaintiff's contributory negligence to the jury, but also by conditioning res ipsa loquitur instructions on plaintiff's accountability for his own actions. We

believe the court properly submitted the question of plaintiff's negligence to the jury, although we have found no California cases in point. The reports of other jurisdictions reveal few cases considering the question and they are of little help in determining the issue before us. We learn from Prosser, Torts, 2d ed., that the question is largely unresolved throughout this country. At page 793, Prosser states:

"So far as negligence is concerned, there have been surprisingly few cases, all of which have held the insane person liable for failure to conform to the standard of conduct required of a sane man. One of these at least contains the suggestion that the defendant is not liable where his insanity is not brought on by his own fault. In view of the allowance made for the limited mental capacity of children, in the form of a special standard of conduct applicable to them, it has been contended, with apparent reason, that the lunatic should likewise be held to no higher degree of care than he is capable of exercising. The question may be said to be still an open one in the United States."

We do have California decisions concerning the mental capacity of persons to execute wills, deeds, contracts and other instruments which parallel the issue before us, and we have many criminal cases discussing the issue of not guilty by reason of insanity. These cases support our conclusion that the issue of contributory negligence of a mentally disturbed person is a question of fact; unless, of course, the evidence discloses that the person whose actions are being judged is completely devoid of reason. If he is so mentally ill that he is incapable of being contributorily negligent, he would be entitled to have the jury so instructed, since his position would be comparable to the child of tender years that is incapable of contributory negligence as a matter of law (*Gonzales* v. *Davis,* 197 Cal. 256 [240 P. 16]; *Ellis* v. *D'Angelo,* 116 Cal.App.2d 310 [253 P.2d 675]; *Christian* v. *Goodwin,* 188 Cal.App.2d 650 [10 Cal. Rptr. 507]). But only in those cases in which the evidence would admit to no other rational conclusion would plaintiff be entitled to have the issue determined as a matter of law. The state of the evidence in this case did not warrant such an instruction. Plaintiff had never been adjudged mentally ill nor had he ever been declared incompetent. He voluntarily signed himself in as a patient of defendant hospital after personally inspecting and approving the facilities. It is true plaintiff testified that he had no recollection of the events surrounding the accident and produced medical testimony that

his actions at the time were impulsive and irrational. On the other hand, there is evidence indicating that his actions were voluntary even though impulsive and even though irrational in the sense of acting without forethought. From the record, it is apparent that reasonable minds might differ upon the question of plaintiff's accountability for his own actions, and the question was one of fact properly submitted to the jury (*Mattos* v. *Kirby,* 133 Cal.App.2d 649, 652 [285 P.2d 56]; *Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296, 303 [163 P.2d 860]; *Mullen* v. *Bruce,* 168 Cal.App.2d 494, 497 [335 P.2d 945]). The court fully instructed the jury on the law of contributory negligence in the light of the circumstances of this case. Among other instructions on contributory negligence, the court admonished the jury that ". . . it is necessary for you to visualize a person in a similar condition when ascertaining what acts or omissions would be negligent and what would not be. Accordingly, if you find from the evidence in this case that at the time of the accident and immediately preceding it the Plaintiff, THADDEUS DeMARTINI, was in such mental condition that he was likely to harm himself or was not capable of realizing the consequences of his acts or of caring for his own safety, and that the defendant hospital, with knowledge of plaintiff's condition had undertaken to safeguard him and protect him against himself, then I instruct you that as a matter of law the Plaintiff, THADDEUS DeMARTINI, was not guilty of contributory negligence."

### DUTY OF CARE OWED BY HOSPITAL

Plaintiff argues that since defendant hospital specializes in the treatment of the mentally ill, it "should be held to the highest degree of care and that the slightest degree of negligence will fix liability." Plaintiff concedes that there are no California cases so holding but contends that this court should impose a rule similar to that applicable to the common carrier. Under the present rule, hospitals are required to exercise ordinary care while the amount or quantum of care varies according to the particular case. A court instructing a jury on the amount of care that a hospital is required to exercise must relate that duty to both the degree of care and the circumstances peculiar to the case being tried. The rule is stated in *Wood* v. *Samaritan Institution, Inc.,* 26 Cal.2d 847, at pages 851, 852 [161 P.2d 556], as follows:

" 'The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular

case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. **[■■** The measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. A hospital is liable for want of ordinary care, whether from incompetency of a nurse or failure in duty by a fully qualified nurse. . . . **[■■** *The duty of care imposed on a hospital extends to safeguarding the patient from dangers due to mental incapacity.* . . . On the other hand, a private hospital is not an insurer of a patient's safety, and the rules as to care required are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen.' '' [Emphasis supplied.] (See also *Rice* v. *California Lutheran Hospital, supra.*)

**■■** The court gave instructions within the rationale of the Wood case, thus following the present rule. The rights of plaintiff, a mentally ill person, were adequately protected, and there is no compelling reason for changing the duty of care to the ''highest degree'' as plaintiff suggests.

**■■** As an adjunct to his argument concerning the duty of care owed by defendant hospital, plaintiff assigns as error the instruction that ''The measure of duty of a sanitarium is to exercise that degree of care, skill and diligence used by sanitariums generally in that community, and required by the express or implied contract of the undertaking.'' Plaintiff argues that the proper standard is the ''same degree of care, skill and diligence used by other sanitariums in the community which specialize in the care and treatment of mentally disturbed patients.'' We see no basis for narrowing the duty of care to the standard of hospitals specializing in the treatment of the mentally disturbed. General hospitals are frequently called upon to administer to mentally ill persons, among them patients whose mental processes are disturbed because of shock, fever, drugs, anesthetics, and alcohol, as well as mentally ill persons requiring treatment of some physical ailment. Furthermore, short-term care for the mentally ill is provided by many general hospitals. The mentally disturbed patient is entitled to the same degree of care, whether he is being treated in a general hospital or in one specializing in the care of the mentally ill.

## EXTRAJUDICIAL STATEMENT OF EMPLOYEE

The trial court sustained an objection to testimony by plaintiff's wife purporting to relate a conversation in the nature of an admission by an employee of defendant hospital, and plaintiff assigns this as error. The employee was not identified except by a vague general description. The conversation took place not in the defendant hospital, but at Mills General Hospital, where plaintiff was being treated for a fractured ankle. The offer of proof was that the man introduced himself as an employee of defendant hospital. This alone would be insufficient to render the conversation admissible, since agency cannot be proved by the extrajudicial declarations of one purporting to be an agent (*Scott* v. *Los Angeles Mountain Park Co.*, 92 Cal.App. 258 [267 P. 914]; *Whiteside* v. *United Theatres*, 106 Cal.App.2d 471, 476 [235 P.2d 261]). Although agency may be proved by circumstantial evidence (*Anglo-Californian Bank* v. *Cerf*, 147 Cal. 393, 399 [81 P. 1081]; *People* v. *Frangadakis*, 184 Cal.App.2d 540, 549 [7 Cal.Rptr. 776]), the alleged agent here was never seen at defendant hospital. That he was attending plaintiff at Mills General Hospital would hardly be sufficient to establish agency by circumstantial evidence. Plaintiff's case is further weakened by the failure of his offer of proof to allege that the unidentified witness personally observed the matters he is alleged to have related to plaintiff's wife. The offer sounds in hearsay, and to have admitted it would have been to predicate hearsay upon hearsay.

## CONDUCT OF THE COURT

Finally, plaintiff urges that the court committed prejudicial error by a remark made toward the conclusion of the instructions. The court apparently misplaced or overlooked one page of instructions on the subjects of the malpractice of a doctor and of damages. Plaintiff called this oversight to the attention of the judge but did so out of the hearing of the jury. The judge then remarked to the jury: "Well, we have some other instructions to read to you. I think we can take up the time. It was on another sheet." Plaintiff argues that the remark inferred to the jury that the judge believed that the instructions were not necessary because the jury wouldn't find defendant liable, and that they would not have been read had there not been ample time. Ostensibly, there was nothing wrong with the remarks, "Well, we have some other instructions to read to you," and "It was

on another sheet." The comment, "I think we can take up the time" was unnecessary and an inadvertent attempt to minimize an embarrassing oversight. But it was not reversible error since the record does not bear out the argument of plaintiff. Before the comment was made, the court had given several instructions on the subject of damages so that a reasonable juror could not have deduced that the court did not expect the jury to determine damages or that he did not consider instructions on damages necessary. The court also instructed the jury that:

"I have not intended by anything I have said or done or by questions that may have been asked, to intimate or suggest what you should find tó be the facts, or that I believe or disbelieve any witness who may have testified. If anything that I have done or said has seemed to so indicate, you will disregard that intimation and form your own opinion without any regard thereto."

The judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied June 23, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1961.