[Civ. No. 20695.   First Dist., Div. Two.   Jan. 21, 1964.]

MARY V. GREEN, Plaintiff and Appellant, v. HERBERT WATSON et al., Defendants and Respondents.

Thomas P. Meehan and Wilkie C. Courter for Plaintiff and Appellant.

Cresswell, Davis & Church, Ericksen, Ericksen & Kincaid, Jackon C. Davis and Richard D. Bridgman for Defendants and Respondents.

TAYLOR, J.—The plaintiff, Mary V. Green, appeals from an adverse judgement entered on a jury verdict in an action for damages for personal injuries. The complaint alleged that in 1958, the plaintiff, while staying at the Redcrest Inn

Motor Court owned by the respondent Watson, sat in a canvas chair manufactured and sold in 1956 by the respondent Mallin, and that as the result of the negligence and breach of warranty of each of the respondents, the chair collapsed and the plaintiff suffered serious injuries to her back. The jury responded negatively to special interrogatories on both issues as to both respondents and returned a unanimous defense verdict. On this appeal, the plaintiff contends that the liability of Watson and Mallin was established as a matter of law and that improper instructions and irregularities in the proceedings of the court and counsel deprived her of a fair trial. We see no merit in these contentions.

Viewing the record most favorably to the judgment, as we must on appeal, the facts are as follows: In the summer of 1958, appellant's husband, a construction worker, was employed in Humboldt County and appellant and the two minor children joined him for one week. On Friday, August 1, 1958, the family rented accommodations by the week at the Redcrest Inn Motor Court in Humboldt County from the respondent Watson, who with his wife, daughter and son-in-law, owned and managed the 10-unit motel. The Greens were assigned unit five, consisting of two bedrooms, a kitchenette, a bath and a carport at the weekly rate of about $40. The chair in question was the only one in the bedroom used by the appellant and her daughter and consisted of a wrought iron hoop about 30 inches in diameter welded to four legs, with the rear of the hoop at shoulder level and the front at knee level; a circular piece of canvas attached to the hoop by means of cord through the hem formed the seat. A 5-inch opening in the hem of the canvas exposed a part of the fastener and permitted the closing.

From August 1 to August 3, the Green's son, a typical active bouncy 13-year-old boy, used the chair, as did his sister and the appellant. On the evening of August 3, 1958, the appellant sat in the chair to read the paper. The canvas seat collapsed and she fell through the rim, landing on her tailbone with her knees up under her chin.

Although the appellant stated that she was in excruciating pain all night, no effort was made to call a doctor. Mr. Watson was notified 24 hours after the accident. The appellant did not go to a doctor until Tuesday, August 5, two days after the accident and, rejecting an offer to be driven, elected to drive herself. The appellant testified that Dr. Coolahan took X-rays and prescribed medicines for her condition but

no evidence to confirm such treatment was introduced. Appellant made no further effort to obtain other medical care despite her pain and remained at the motel with her children for the balance of the week. On August 8, the appellant drove home to Pittsburg in Contra Costa County with the children.

On August 9 and 11, the appellant saw her orthopedic surgeon, Dr. Steinbergh, and received treatment for the back injuries allegedly caused by the chair incident. The appellant testified that apart from this instance, she had only consulted Dr. Steinbergh for varicose veins two years earlier. The testimony of Dr. Steinbergh's associate, Dr. Jaskiewicz, called as the appellant's medical expert, indicated that the previously introduced medical records relating to the appellant were incomplete. The complete records produced on order of the court indicated that Mrs. Green had not been treated for varicose veins but had undergone a series of treatments in 1948 for sacroiliac and lumbosacral distress, dating back three and a half years and including various degenerative changes in the lower vertebrae.

Respondent Mallin, dba Mallin Co., Inc., was in the business of manufacturing and selling steel and garden furniture to institutional users and retailers. In the spring of 1956, he sold several canvas chairs of the type in question to Watson for $3.75 or $3.95 each. Watson informed the Mallin salesman that the chairs were intended for motel use, tried them out before the purchase, and found them satisfactory. Watson selected the type of chair in question because it was sturdy, yet light, washable, and would not absorb moisture.

The chairs were delivered to the motel in packages and assembled by Watson and his son-in-law. Mallin testified that all chairs of this type made by his company were manufactured with wire fasteners because cord was an unsafe medium for securing the canvas seat. Watson testified that the chairs arrived with cord in the hem of the canvas. Watson tied the cord with a square and a double or triple knot, and his son-in-law bounced on the chairs to test them. During the closed winter season, Watson and his family inspected, tested and renovated the furnishings of their motel. In addition, whenever a unit was vacated, it was cleaned and inspected. Between the date of the purchase of the chairs in the spring of 1956 and the accident two years later, Watson had washed and replaced the canvas covers of several chairs, as well as replacing the cords in two of them but did not re-

member whether these included the chair in question. When replaced, the cord was inserted double and several knots tied.

The appellant's husband testified that he examined the chair after the accident and found that the canvas seat was entirely detached from the hoop. He extracted a broken piece of cord from the hem. The cord was similar to cord used elsewhere in the motel, but not long enough to reach around the hoop of a similar chair.

Appellant first argues that Watson's liability was established as a matter of law because the evidence showed that in furnishing a bedroom with a defective chair, he had breached his duty to maintain the premises in a reasonably safe condition at all times since appellant was a lodger rather than a tenant. However, the evidence left the status of the appellant uncertain. The chief distinction between a lodger and a tenant lies in the character of possession. A "lodger" has only the right to use the premises, subject to the landlord's retention of control and right of access. A "tenant" has exclusive legal possession of premises and is responsible for their care and condition. When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys, a person renting such a room is a lodger and not a tenant (*Stowe* v. *Fritzie Hotels, Inc.*, 44 Cal.2d 416, 421 [282 P.2d 890]).

The evidence indicates that the appellant and her family had rented unit five at the $40 a week rate rather than the usual $70 a week rate. This reduction in price was for long-term occupants who were entitled to fewer services than short-term guests. Appellant's husband remained for an additional week after she left. The appellant testified that when the maid came up every morning to do whatever work was needed, she told the maid that the children liked to sleep late on vacation and "we would take care of ourselves." The record is silent as to the extent of control retained by Watson and his agents.

The appellant argues that Mallin's liability for negligent design[1] and manufacture and breach of warranty was established as a matter of law because his testimony established that the cord was unsafe. This argument is based on Watson's testimony that the chairs arrived with cord. Mallin, on

---

[1]No evidence was introduced nor argument made in the trial court concerning the chair's negligent design.

the other hand, testified that because cord was unsafe, the chairs were manufactured with wire and not with cord.

Thus, under the particular circumstances presented, the extent of the obligations and warranties of each of the respondents to the appellant or any breach thereof was a question of fact for the jury. The jury could conclude that the relationship of the parties was more *that of landlord and tenant than lodger and proprietor*, or that, even if the appellant was a lodger, she prevented Watson and his agents from carrying out their duties. Watson testified that the chairs had been inspected and reconditioned in the off-season when the motel was closed as well as after each vacancy during the season. The appellant and her children used the chair for several days before the accident and noted no disrepair. Assuming, for the sake of argument, that the jury had concluded that either or both of the respondents had breached a duty or warranty, there was conflicting evidence as to whether such breach was the proximate cause of the appellant's back injury. As to Watson, the jury could reasonably conclude that the use of the chair by the appellant and her children caused its collapse, as well as that the appellant's injuries were the result of her preexisting back condition. As to Mallin, the jury could reasonably conclude that Watson's actions were an efficient intervening cause (*Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688 [59 P.2d 100]).

We turn now to the appellant's contention concerning the various errors in the instructions to the jury. ▮ Appellant's chief argument is that the court erred in giving conflicting instructions on res ipsa loquitur and the mere happening of an accident. The record reveals that the court first instructed the jury as follows: "The mere fact that an accident happened, or that the chair in question collapsed, considered alone, will not support a finding of breach of warranty or negligence against the Defendant, Sam Mallin." As the above instruction was limited to the respondent Mallin, while the res ipsa loquitur instruction was limited to the respondent Watson, there was no conflict. The jury was properly told to distinguish between the obligations of each of the respondents as to each theory of liability.

The court further instructed the jury as follows: "In a case as here presented, there is no legal presumption of negligence on the part of the defendants, or that there was a breach of warranty. Such matters are facts, which like other

material facts alleged by any party, must be proved by the party upon whom rests the burden of proof.

"You are instructed that, the mere happening of an accident, or the filing of a complaint and answer, or the fact that injuries have been sustained, raises no presumption of negligence as to the defendants or that there was a breach of warranty."

Appellant points out that this instruction applied to both defendants and argues that when given with the res ipsa loquitur instruction constituted reversible error because of the inconsistency and confusion. We cannot agree. Under the circumstances of this case, the applicability of the doctrine of res ipsa loquitur as to respondent Watson was a question of fact for the jury. ▮ Although it is prejudicial error to give both instructions where res ipsa applies as a matter of law, it is error, but not necessarily reversible error, to give both instructions when res ipsa is a question of fact (*Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266 [1 Cal.Rptr. 330, 347 P.2d 674] ; *DeMartini* v. *Alexander Sanitarium, Inc.*, 192 Cal. App.2d 442 [13 Cal.Rptr. 564, 91 A.L.R.2d 383]). ▮ We do not think that the error could be prejudicial here as the jury was merely informed that from the facts recited in the instruction, the law did not presume or expressly direct any deduction of negligence as to either defendant but that if, from the facts in evidence, they concluded that res ipsa loquitur existed as to respondent Watson, his negligence could be inferred as a matter of fact (37 Cal.L.Rev. 183, 217). We note also that the res ipsa instruction contained the proper conditional language required where res ipsa is a question of fact (*Davis* v. *Memorial Hospital*, 58 Cal.2d 815, 818 [26 Cal.Rptr. 633, 376 P.2d 561]).

▮ Appellant argues that under sections 1735 and 1955 of the Civil Code, Mallin was required to furnish goods of merchantable quality and Watson to put the chair in a condition fit for the purpose for which it was let and that by the conflict of the happening of the accident instruction with the instructions which the court gave on the violation of the statute, she was deprived of the legal presumption of negligence flowing from the violation of the statutes. This contention is without merit as section 1735 of the Civil Code creates a separate and distinct cause of action of strict liability in favor of the appellant (*Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897]), and does not require any proof of negligence. Furthermore, as

noted from the recited facts, there is a conflict of evidence as to the violation of the statute by either Watson or Mallin and it has been held that it is not reversible error to give the *mere fact that the accident happened* instruction even where proof of violation of the statute was uncontradicted (*Smith* v. *Sugich*, 179 Cal.App.2d 299 [3 Cal.Rptr. 718]). █ Finally, the appellant did not request that the jury be advised that the violation thereof gave rise to a presumption of negligence and thus cannot raise the matter for the first time on appeal (*Nanny* v. *Ruby Lighting Corp.*, 108 Cal.App.2d 856 [239 P.2d 885]).

█ Appellant next argues that the court erroneously instructed the jury that she had an affirmative duty to inspect the chair. As indicated above, the relationship of the appellant to Watson and the duties arising therefrom, were questions of fact for the jury. While the instruction was erroneous under the view that the parties were lodger and proprietor, we do not think the error fatal, as it was neither germane nor relevant to the issue upon which the jury decided the case. The portion of the instruction objected to pertains to the assumption of risk and the duty to inspect on the part of the appellant. The jury in the special interrogatories based their verdict on a finding of absence of negligence or breach of warranty on the part of the respondents. (*Marques* v. *Hill*, 191 Cal.App.2d 777 [13 Cal.Rptr. 168].) We are not impressed with the argument that the instruction affected the element of foreseeability in the jury's determination of whether the respondent Watson acted as an ordinarily prudent man under the circumstances of this case. The court did not instruct the jury that in judging Watson's conduct they were to assume that he was aware of any legal duty of inspection on the part of the appellant Green.

█ The appellant next complains that the court erred in its instruction to the jury concerning Watson's duty.[2] The

---

[2]The instruction in question reads as follows:

"If, when the premises are delivered to the tenant, the landlord knows of some unsafe condition in or on the same; and if that condition is not then known to the tenant or guest, and is not such as would be discovered by a person of ordinary prudence, making a reasonable inspection of the premises; and if the landlord fails to inform the tenant or guest of that condition; and if the tenant or guest suffers injury proximately resulting from that condition — the landlord's failure to disclose the danger is actionable negligence.

"Also, in the absence of knowledge by the tenant or guest to the contrary, and of circumstances that would indicate the contrary to him

appellant's argument that this instruction was erroneous because it applies to the relationship of landlord-tenant instead of that of proprietor-lodger has been discussed above. Appellant next argues that the phrase ''when the premises are delivered'' misled the jury as to the liability of Watson. We cannot agree. The instruction was amply supplemented by other instructions concerning his duty as a motel owner after delivery of possession. From the fact that the appellant and her children used the chair for several days before the accident, the jury could infer that the appellant was in a better position to discover the defect in the chair, if any, than Watson, whose agent was prevented from coming into the room.

The next contention is that the trial court erred in refusing appellant's proffered instruction No. 24, stating that if the motel owner created the negligent condition of the chair, knowledge of said condition was conclusively presumed. Watson admitted knowledge that the chairs were equipped with cord both at the time he purchased them and continuously thereafter and there was no useful purpose in instructing the jury he was presumed to have such knowledge. *Gilbert* v. *Pessin Grocery Co.*, 132 Cal.App.2d 212 [282 P.2d 148], cited by the appellant, is not relevant here, as in that case, the plaintiff attempted to establish knowledge on the part of the defendant contrary to the defendant's testimony that he had no knowledge of the malfunctioning of floodlights.

Appellant also argues that the trial court erroneously shifted control of the case to the jury by telling them to weigh the instructions of the court. This contention is based on the italicized portion of the following introductory instruction: ''Ladies and Gentlemen of the Jury, it is very, very important that you hear these instructions. I want you to be relaxed, at ease, and I'll try to read suffi-

---

or her, or would so indicate to a person of ordinary prudence in like position, the tenant has a right to assume that when the landlord, whether obligated to do so or not, undertakes to make repairs on the premises, the landlord will exercise ordinary care in doing so. If, when entitled to that assumption, and relying on it, but not otherwise, the tenant suffers injury from an unsafe condition resulting from the landlord's negligence in connection with such work, such negligence is actionable.

''Liability against the landlord arises in a case of his negligence in the making of repairs only if such negligence creates a latent defect or danger, known to him and concealed by him from the tenant, and if the tenant suffers from injury of which such condition is a proximate cause.''

ciently loud to overcome any outside noise. If I hear a truck coming, and I stop, it doesn't mean that I am placing any undue influence, or emphasis on any of the instructions—it means simply that we do have the noise, and *I want you to hear each and every instruction, and to give each instruction the weight to which you deem it entitled*—and not single out any certain instructions, as I shall hereafter inform you'' (Italics supplied.) A reading of the entire instruction in its proper context shows that the court was merely explaining the effect of noise and other unpredictable interruptions. ▆ Instructions must be considered as a whole rather than out of context. ▆ The court repeatedly instructed the jury concerning its duty to determine the facts and that it was bound to follow the law as stated by the court. ▆ We are not permitted to seek out a possible and strained construction of the words used and infer that the jury followed the distorted interpretation (*Taylor* v. *Gordon,* 102 Cal.App. 2d 233 [227 P.2d 64]). ▆ We note that the appellant did not object to what she now asserts as error (*American Home Assurance Co.* v. *Essy,* 179 Cal.App.2d 19 [3 Cal.Rptr. 586]). In looking at the instructions as a whole, we can only conclude that the court instructed the jury substantially correctly on the issues of law (*Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655 [283 P.2d 91]).

We turn next to the appellant's argument that she was denied a fair trial by certain irregularities in the proceedings of the court and counsel. ▆ Appellant first argues that certain portions of the opening statements of Mallin's attorney were improper and constituted prejudicial error. The record shows that the appellant failed to object to any portion of such opening statement and thus waived the matter as to this appeal (Code Civ. Proc., §§ 646, 647).

▆ Appellant next complains of reversible error because of the following: counsel for Mallin asked Watson's medical expert, Dr. Holcomb; ''Q. Just one last question, Doctor:— from your experience, as you have described it, do you have any opinion as to the propensities of people to get well, or not to get well, when there is a lawsuit pending? A. Oh, I think all of us have a little larceny in our hearts.'' Appellant's counsel immediately objected to the doctor's reply and his objection was sustained, but no request was made to admonish the jury to disregard the specific response. We can find no indication of any misconduct on the part of respond-

ents' counsel in anticipating or provoking this answer, nor do we think the reply prejudicial.

Finally, the appellant argues that there was substantial prejudicial error during the final argument. The transcript shows that just before the final argument, Mallin's counsel moved to reopen the case to offer for identification the purchase order and bill of lading for the chairs. Appellant consented and the court granted the motion. Thereafter, in his closing argument, appellant's attorney indicated that respondent Mallin had destroyed the receipt for the sale of the chairs from Mallin to Watson. Counsel for Mallin objected and the court ordered appellant's counsel to desist from making such argument or be found in contempt. The record does not disclose any destruction of the documents in question. Under the circumstances, the trial judge's concern is understandable. Furthermore, it is conceded that the exchange between the attorneys and the court was based in large part on the court's reference to an unreported conference between the court and counsel in chambers. Having failed to protect the record, appellant is not now in a position to claim error based on the unreported proceedings. (*McDaniel* v. *Dowell*, 210 Cal.App.2d 26 [26 Cal.Rptr. 140].) The entire matter of the receipt was trivial and of no consequence as it had been established earlier on the cross-examination of respondent Mallin that the receipt would not show whether the chairs had been delivered with cord or wire fasteners. Appellant made no objection or motion during or at the close of this exchange. We think from an examination of the entire record, the trial court properly exercised reasonable supervision over the arguments of counsel.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied February 20, 1964, and appellant's petition for a hearing by the Supreme Court was denied March 18, 1964.