# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Graham v. Northwestern Memorial Hospital*, 2012 IL App (1st) 102609

| | |
|---|---|
| Appellate Court Caption | KAREN GRAHAM, Independent Administrator *de bonis non* of the Estate of MARILEE GRAHAM, Deceased, Plaintiff-Appellee, v. NORTHWESTERN MEMORIAL HOSPITAL, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-2609 |
| Filed | February 3, 2012 |
| Rehearing denied | February 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the suicide of plaintiff's decedent while an involuntary patient at defendant hospital, the trial court's order granting a new trial on the ground that defense counsel's conduct during the trial prejudiced the jury against plaintiff was reversed as an abuse of discretion, but the trial court did not abuse its discretion in granting plaintiff a new trial based on the determination that instructing the jury on contributory negligence was an error where the evidence supported the ruling that plaintiff's decedent was completely devoid of reason at the time of her suicide; however, limiting the new trial to damages only was an abuse of discretion where no evidence supported the conclusion that the erroneous instruction impacted the calculation of damages and the only fair remedy was to order a new trial on all issues. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-13009; the Hon. Thomas E. Flanagan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Donohue Brown Mathewson & Smyth LLC, of Chicago (Richard H. Donohue, Sherrie M. Arrigo, and Karen Kies DeGrand, of counsel), for appellant.

Barbara D. Klein, of Barbara D. Klein & Associates, and Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, both of Chicago, for appellee.

Panel

JUSTICE GARCIA delivered the judgment of the court, with opinion.
Justices Lampkin and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury verdict in favor of the plaintiff, the circuit court granted a new trial on the issue of damages only. Northwestern Memorial Hospital (Northwestern Memorial) was found liable for the suicide of the plaintiff's decedent, Marilee Graham, and the jury awarded the plaintiff $490,196. The jury found Marilee 49% at fault, reducing the damages award to $250,000. On the plaintiff's posttrial motion, the circuit judge ruled that he erroneously instructed the jury on contributory negligence and that defense counsel engaged in prejudicial conduct. Under an abuse of discretion review, we conclude reasonable minds could differ on the circuit court's decision to grant a new trial based on the erroneous instruction and affirm that ruling. However, the record fails to support the conclusion that the erroneous instruction impacted the damages award; we remand for a new trial on all issues.

¶ 2                            BACKGROUND

¶ 3    Marilee Graham was a patient in the psychiatric unit of Northwestern Memorial when she took her own life on August 6, 2004. She was a 49-year-old woman with a history of mental illness and had attempted suicide on previous occasions. At 4:30 p.m. on August 5, Chicago police brought Marilee to Swedish Covenant Hospital (Swedish Hospital). The police had been called after her family feared Marilee had attempted suicide by ingesting Klonipin (pills containing benzodiazepine) and consuming a bottle of wine. Before taking the pills with the wine, Marilee wrote goodbye e-mails to her sister and her boyfriend. Upon arrival at Swedish Hospital, Marilee was combative, crying, and saying she wanted to die. Doctors placed Marilee in physical restraints. Marilee was placed on medications to calm her mood. Swedish Hospital notified Marilee's long-time psychiatrist Dr. Fabian Carbonell of her condition, including her possible attempted suicide. Marilee refused admission to the hospital by consent. Doctors at Swedish Hospital concluded that Marilee was a danger to herself and, with Dr. Carbonell's concurrence, admitted Marilee against her will. Following her involuntary admission, Dr. Carbonell arranged for Marilee to be transported that same day to Northwestern Memorial for in-patient treatment.

¶ 4 During Marilee's transfer to Northwestern Memorial by ambulance, she remained in restraints. The admitting nurse at Northwestern Memorial, Oscar Perry, spent an hour with Marilee. He concluded that she no longer posed a danger to herself and released her from restraints. At this time, Marilee was irritable, yet cooperative. Dr. Shane Spicer, a psychiatric resident at Northwestern Memorial, evaluated Marilee on the night of August 5. Dr. Spicer concluded that Marilee did not pose an imminent risk of harming herself. At approximately midnight, Marilee went to sleep. The staff allowed Marilee to rest overnight undisturbed as part of the typical treatment plan for psychiatric patients. A mental health worker took her vital signs at 6 a.m. At 6:27 a.m., Marilee awoke for the day.

¶ 5 At 11 a.m. on August 6, Dr. Carbonell, along with Northwestern Memorial nurse Jason Brigham, examined Marilee. At that time she was hostile and combative. Dr. Carbonell found it difficult to engage her in conversation. Marilee stated she wanted to leave the hospital and pounded on a window. She spit at her caretakers and threw a plastic container in Dr. Carbonell's direction. She tried to bite one of the staff members. She was screaming and using profanity.

¶ 6 Marilee told Dr. Carbonell she was upset about being taken off her Hepatitis C medication, Interferon. She had the unfounded fear that without Interferon she faced an imminent and painful death. Dr. Carbonell noted that Marilee's mood went from very angry to very sad. She was thin, disheveled, and had poor psychomotor agitation. When attempts to calm her failed, Dr. Carbonell ordered Marilee be placed in restraints. He instructed nurse Brigham to administer the antipsychotic drug, Haldol; lithium, for her bipolar disorder; and Atavan, to calm her impulsive behavior.

¶ 7 During this exam, Marilee denied having thoughts of suicide. Her chief concern was to leave the hospital. When called to testify as an adverse witness, Dr. Carbonell agreed that Marilee was "falling apart mentally and emotionally" and was "in severe emotional pain" on the morning of August 6. Marilee told Dr. Carbonell that she was sorry that she did not die the previous day. Dr. Carbonell certified Marilee for involuntary commitment; he found she posed a danger to herself, had impaired judgment, and required hospital staff supervision to keep her safe. Dr. Carbonell ordered Marilee to remain secluded and in restraints and directed the staff to maintain continuous visual observation. The order had an expiration time of 3 p.m., but the attending nurses could extend the expiration time upon consultation with a doctor. Dr. Carbonell expected nurse Brigham to reassess Marilee and release her from restraints when appropriate.

¶ 8 Consistent with Dr. Carbonell's testimony regarding Marilee's condition at 11 a.m., nurse Brigham noted that Marilee was "assaultive, restless, crying, and threatening." An entry on Marilee's chart at 11:15 a.m. by another staff member noted that Marilee was "restless and crying" and pulling at her restraints. At 11:30 a.m., a staff member wrote that Marilee was restless and crying and attempting to bite her left wrist restraint. At 11:45 a.m. a similar entry was made that Marilee was restless and pulling at her restraints. During an evaluation around noon by nurse Brigham, Marilee stated she did not want to hurt herself. Nurse Brigham removed Marilee's restraints. She remained quiet for the remainder of nurse Brigham's shift, which ended at 3 p.m.

¶ 9    The staff continued with visual observations of Marilee at 15-minute intervals. At approximately 3 p.m., Marilee complained of stomach pain and cramps. She was awake in her room from 3:30 to 9 p.m.. Darryl Calvin, a mental health worker, checked her every 15 minutes between 4 and 8:45 p.m. That evening, nurse Jane McKeon was assigned to care for Marilee, along with eight or nine other patients. She did not have independent recollection of her interactions with her patients that evening, but she testified that between 4 and 4:15 p.m., it was her practice to introduce herself to the patients, including Marilee. She would have asked Marilee how she was feeling, whether she felt like hurting herself or anyone else, and if she needed anything.

¶ 10    At 4:15 p.m., nurse Gloria Johnson saw Marilee on the telephone as she passed through the nurses' station. At approximately 5 p.m., nurse McKeon administered medication to Marilee. It was her custom and practice to reintroduce herself when administering medication, during which she would engage in a brief conversation with the patient. She would have watched Marilee closely to make sure she swallowed the medication. Marilee was in her room alone most of the evening. She refused to eat dinner. Sometime between 6 and 7 p.m., nurse McKeon saw Marilee near the phones by the nurses' station, but she could not recall whether Marilee was talking on the phone. Nurse McKeon testified that a patient being out of her room and talking on the telephone would be a positive sign.

¶ 11    At 8:45 p.m., mental health worker Calvin performed a visual observation of Marilee. Marilee nodded her head at Calvin. Between 9 and 9:45 p.m., mental health worker Paulette Carter performed routine checks of Marilee. Carter testified that Marilee was sleeping during this period. At 9:20 p.m., nurse Johnson passed Marilee's room and saw her lying on her stomach asleep. Carter saw Marilee alive in her room between 9:40 and 9:43 p.m. At 9:45 p.m., nurse McKeon entered Marilee's room and found her hanging from a hinge on the bathroom door with a bedsheet tied around her neck. Several nurses cut the sheet and carried Marilee to the bed. They were unable to resuscitate her.

¶ 12    At trial, both fault and damages were contested. Over the plaintiff's objection, the judge instructed the jury on contributory negligence. The judge told the jury that the damages award would be reduced by the percentage of fault it assigned to Marilee. He also informed the jury that if it found Marilee more than 50% negligent, the defendant would be found not liable. The jury found Marilee 49% at fault and awarded $490,196 in damages. The fault assigned to Marilee reduced the award to $250,000. The defendant's responsibility for the reduced damages was zero based on a pretrial settlement with a codefendant.

¶ 13    In her posttrial motion seeking a new trial on damages, the plaintiff faulted the judge for instructing on contributory negligence. The plaintiff also argued defense counsel's misconduct prejudiced the jury against the plaintiff. The court did not elaborate on its ruling that it erred in instructing the jury on contributory negligence, which it concluded warranted a new trial. "The factual evidence in this case requires the refusal of submitting comparative negligence to the jury." The court also provided little explanation for a new trial triggered by defense counsel's purported misconduct: "Considering the totality of the evidence and the conduct of the case." The court ruled the new trial would be limited to damages only.

¶ 14    We granted the defendant's petition for leave to appeal.

¶ 15                                           ANALYSIS

¶ 16     The defendant presents a three-pronged attack on the order granting a new trial. The defendant claims that before reversible error can arise from instructing the jury on contributory negligence, the trial judge must find that Marilee was "completely devoid of reason" at the time of her death, a showing the defendant contends cannot be made on the record before us. The defendant also claims the circuit court abused its discretion by finding that the alleged misconduct by defense counsel affected the outcome of the trial. Finally, the defendant disputes that a new trial limited to the issue of damages is warranted even if the jury was improperly instructed on contributory negligence and misconduct occurred at trial. We address the three claims separately.

¶ 17                            Instructing on Contributory Negligence

¶ 18     The question of whether, in a negligence action, the jury should be instructed on contributory negligence involving a mentally ill patient that commits suicide has proved a difficult question for courts to answer. There are competing views among jurisdictions nationwide. See *Hobart v. Shin*, 185 Ill. 2d 283, 290 (1998), for a list of cases.

¶ 19     In *Hobart*, our supreme court concluded that only in a rare case should the trial court refuse to instruct the jury on contributory negligence arising from the suicide of a mentally ill patient. *Id*. The court held contributory negligence is generally a question of fact for the jury to decide even when suicide is involved. *Id.* The appellate court had held that contributory negligence should not apply to suicide patients because their mental illness deprives them of their ability to exercise ordinary care for their own safety. *Hobart v. Shin*, 292 Ill. App. 3d 580, 586-87 (1997) (citing *Peoples Bank of Bloomington v. Damera*, 220 Ill. App. 3d 1031, 1035-36 (1991)). The supreme court rejected that view. *Hobart*, 185 Ill. 2d at 290. Instead, the court quoted with approval the holding in *DeMartini v. Alexander Sanitarium, Inc.*, 13 Cal. Rptr. 564 (Cal. Dist. Ct. App. 1961):

> " '[T]he issue of contributory negligence of a mentally disturbed person is a question of fact; unless, of course, the evidence discloses that the person whose actions are being judged is completely devoid of reason. If he is so mentally ill that he is incapable of being contributorily negligent, he would be entitled to have the jury so instructed ***. But only in cases in which the evidence would admit to no other rational conclusion would plaintiff be entitled to have the issue determined as a matter of law.' " *Hobart*, 185 Ill. 2d at 290 (quoting *DeMartini*, 13 Cal. Rptr. at 567).

¶ 20     Thus, in the typical case, it falls to the jury to determine whether a mentally disturbed person is contributorily negligent. An exception to this rule applies when the evidence permits that the decedent was " 'completely devoid of reason' " as the only rational conclusion that can be reached. *Id.* (quoting *DeMartini*, 13 Cal. Rptr. at 567)*.* Only then should a jury not be instructed on contributory negligence. *Id.*

¶ 21     While the determination that Marilee was "completely devoid of reason" concerns a legal ruling by the circuit court as directed by *Hobart*, a reviewing court examines that ruling for an abuse of discretion. See *Junker v. Ziegler*, 113 Ill. 2d 332, 340 (1986) ("We must determine here *** whether the trial judge abused his discretion in determining that the

-5-

verdict was against the manifest weight of the evidence."). This is so because our review concerns whether the jury should have been instructed on contributory negligence, a decision that rests within the circuit court's discretion. *Hobart*, 185 Ill. 2d at 294. Under the circumstances of this case, the abuse of discretion applies because the circuit court granted the plaintiff a new trial. See *Ruffin v. Boler*, 384 Ill. App. 3d 7, 17 (2008) (deferential standard applies to the decision of whether to grant a new trial because the trial judge "has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility" (internal quotation marks omitted)). We will reverse the grant of a new trial only when an affirmative showing is made that the court abused its discretion. *Cardona v. Del Granado*, 377 Ill. App. 3d 379, 385 (2007). " 'A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view.' " *Id.* (quoting *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005)).

¶ 22    In this case, at the conclusion of the evidence, the trial judge ruled the jury would be instructed on contributory negligence. However, during posttrial proceedings, the judge reassessed the evidence and determined that it supported only one rational conclusion–that Marilee was completely devoid of reason when she committed suicide. The trial judge cited the evidence as to Marilee's mental state to reach this legal determination against the backdrop of the jury's finding of liability against Northwestern Memorial. Northwestern Memorial claims that in doing so the trial judge abused his discretion.

¶ 23    Under the agreed-upon standard of review, the question before us is whether the grant of a new trial was "arbitrary, fanciful, or unreasonable" based on the decision that Marilee was "completely devoid of reason" at the time of her death, in light of the record evidence.[1] *Id.* Marilee had attempted to kill herself less than 48 hours earlier. On the morning of her death, she was irrational, fighting with doctors, and attempting to bite hospital staff. Nine hours before killing herself, Marilee was so out of control that she was placed in restraints for her own safety. At the time Marilee was placed in restraints on August 6, she was also given medications to control her outbursts. The trial judge was in a much better position, based on the evidence presented, to assess whether the complacency Marilee displayed during the late afternoon and evening hours on August 6 stemmed from the medications Marilee received. Ultimately, we defer to the trial court's conclusion that the record evidence supported only one rational conclusion–that Marilee was completely devoid of reason at the time she committed suicide. Her suicide attempt the day before, her expression to Dr. Carbonell that she regretted not having been successful in her attempt, Dr. Carbonell's assessment that Marilee was "falling apart mentally and emotionally" and was "in severe emotional pain" on the morning of August 6, which assessment warranted placing Marilee

---

[1]In her brief, the plaintiff cites the testimony of the expert witness and Marilee's treating psychiatrist that while a patient at Northwestern Memorial Marilee was unable to protect herself and provide for her own basic needs. That, however, is the standard to determine whether a patient should be committed against her will. The standard announced by the Illinois Supreme Court for determining whether a contributory negligence instruction is appropriate is whether the patient was "completely devoid of reason," which is the standard the circuit court properly applied below.

in restraints and administering medications to calm her mood, all support the trial court's ruling.

¶ 24    We find no affirmative evidence in the record contrary to the circuit court's ruling. The hospital personnel that interacted with Marilee during the late afternoon and evening hours failed to provide direct testimony of Marilee's mental state. Under the abuse of discretion standard, we cannot say that no reasonable person would adopt the trial court's view that Marilee was completely devoid of reason to render its instruction on contributory negligence reversible error. If this case does not satisfy *Hobart*'s "completely devoid of reason" standard, it is difficult to imagine a case that proceeds to trial that would. Where both the plaintiff and defendant agree that the decedent was completely devoid of reason at the time of suicide, it is reasonable to expect that such a case would settle.

¶ 25    The present case differs substantially from *Hobart*.[2] In *Hobart*, the decedent, Kathryn Hobart, was a 27-year-old woman that suffered from depression and anxiety disorder. *Id.* at 286-87. Kathryn was a student at the University of Illinois at Chicago who sought treatment for her depression. *Id.* at 286. On November 23, 1988, she was voluntarily admitted to the hospital. *Id.* at 287-88. She was released on December 12 and given a prescription for antidepressants. *Id.* at 288. She saw her psychologist on December 21 at which time she seemed upbeat and expressed no thoughts of suicide. *Id.* She asked her psychiatrist for a larger refill for her antidepressant prescription to save on multiple trips to the pharmacy. *Id.* The doctor agreed and prescribed a one-month supply. *Id.* Kathryn saw a psychologist three times during the month of December and at no time did she display suicidal tendencies. *Id.* In early January, Kathryn again suffered a bout of depression. *Id.* She refused to see either of her doctors. *Id.* Two days later, she checked into a hotel using a fictitious name; she committed suicide by ingesting an overdose of her antidepressant pills. *Id.* at 288-89. Kathryn's mother filed suit, contending that the defendant doctor "deviated from the required standard of care by prescribing an excessive amount of antidepressant." *Hobart*, 292 Ill. App. 3d at 581. The defendant doctor was "a family practitioner at the University of Illinois who coordinates his patients' overall health." *Id*. at 582. Following her discharge from the hospital, the defendant doctor observed Kathryn to be "positive and upbeat." *Id*. at 582-83. The defendant doctor gave Kathryn the one-month supply of the antidepressant in response to Kathryn's "concern about running out of medication and about the cost of filling frequent small prescriptions." *Id*. at 583. We find little doubt that Kathryn's activities outside the confines of a hospital demonstrated an awareness that precluded a legal determination that she was devoid of reason. The circumstances present in *Hobart* are a far cry from the circumstances present in the instant case.

¶ 26    Here, Marilee had been involuntarily admitted to Northwestern Memorial because she posed a serious risk of injuring herself. Marilee had attempted suicide less than 48 hours

---

[2]The defendant argues that distinguishing *Hobart* on its facts is misguided because the standard the supreme court announced applies even if the case is distinguishable. While this is true, the issue before us is whether this is one of those rare cases where the decedent met the "devoid of reason" standard. Contrasting the facts in *Hobart* to the facts in the instant case assists in our review of the circuit court's ruling.

earlier and had told her doctor the very day of her death that she wished she had succeeded in killing herself. Marilee hanged herself within a very small window of only a few minutes. Finally, and most importantly, the jury concluded that Northwestern Memorial was negligent in its care of Marilee, even in the face of a contributory negligence instruction. While we apply *Hobart*'s standard, the facts of the instant case drive us to a different result.

¶ 27   Nevertheless, the defendant urges that the circuit court's ruling is at odds with the public policy justification expressed by our supreme court that doctors are not "absolute insurer[s]" for psychiatric patients who pose a suicide risk in *Hobart*. *Hobart*, 185 Ill. 2d at 290-91. The argument is that if too great a burden is imposed on doctors that care for patients like Marilee, doctors may decline to treat such patients, leaving them with nowhere to turn for medical care. *Id.* at 291. We do not agree that under the facts of this case, the ruling by the circuit court that the evidence permitted no rational conclusion other than that Marilee was devoid of reason would make the defendant an "absolute insurer" of Marilee. Many medical negligence cases result in a verdict for the medical professional even in the absence of a contributory negligence instruction. The issue of whether a mentally ill patient was the sole proximate cause of the plaintiff's injury remains an issue for the jury, the evidence of which may favor a verdict for the defendant. See *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 412 (1985) (Ryan, J., dissenting) ("if the plaintiff's conduct is the sole proximate cause of the injury ***, the defendant is not liable").

¶ 28   In any event, *Hobart* does not stand for the proposition that the public policy recognized by our supreme court compels a contributory negligence instruction in every case involving the suicide of a mentally ill patient. The instant case is simply one of the rare cases, as the circuit court determined based on its reassessment of the evidence, that the only rational conclusion that could be reached was that the decedent was completely devoid of reason. Northwestern Memorial did not act as an "absolute insurer" for the safety of Marilee. Rather, Northwestern Memorial was held to the standard of a similarly situated medical services provider to protect the welfare of its patients. The circuit court, with the benefit of the jury's verdict, reasonably concluded that the jury should not have been instructed on contributory negligence. Our supreme court's decision in *Hobart* permits the circuit court's ruling under the facts of this case. Medical providers must have an incentive to properly care for patients that pose a danger to themselves. Instructing on contributory negligence acknowledges the reality that in all but that rare case, a plaintiff's decedent shares a duty with the defendant to exercise ordinary care to protect oneself, which the jury may consider in reaching its verdict. Here, the trial judge concluded that Marilee was unable to exercise ordinary care for herself, from which we conclude this was such a rare case.

¶ 29   The observation of the Iowa Supreme Court in addressing this perplexing problem supports the circuit court's conclusion. In *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104 (Iowa 2011), the decedent was voluntarily committed to the hospital following a suicide attempt. Three weeks after her release and six days after her most recent visit with her doctor, she committed suicide. *Id.* at 106. The court cited the *Hobart* standard with approval and held that the decedent was not "so mentally incapacitated [that] she was incapable of being found negligent as a matter of law." *Id.* at 112. The court observed: "This scenario is *unlike custodial cases* involving the death or injury of an institutionalized patient

incapable of self-care." (Emphasis added.) *Id.* Thus, the rare case where a contributory negligence instruction should not be given in a suicide case will almost certainly involve a "custodial case" where the patient is incapable of exercising ordinary care for her or his own welfare. *Mulhern*, 799 N.W.2d 104. Under the facts of this case, we cannot disagree with the circuit court's conclusion that as a matter of law, Marilee was incapable of protecting herself. Based on the evidence adduced at trial, Marilee could no longer act as a reasonable person to exercise ordinary care over her own welfare.

¶ 30     We caution, however, that our holding here should not be read as supporting a rule that in every case involving the suicide of a plaintiff's decedent who has been hospitalized involuntarily, a circuit court should decline to instruct on contributory negligence, as the plaintiff suggests. Such a bright-line rule would be at odds with the considerable discretion a circuit court exercises in instructing a jury, which must take into account the evidence in the case. Under *Hobart*, the "devoid of reason" standard is applied on a case-by-case basis. We defer to the circuit court's ruling that it erred in instructing on contributory negligence in this case.

¶ 31     The circuit court's posttrial order that it erred in instructing the jury on contributory negligence was not an abuse of discretion under the facts of this case. The trial judge acted within his discretion when he concluded that Marilee was "completely devoid of reason" at the time of her death.


¶ 32                                    Attorney Misconduct

¶ 33     The defendant next challenges the circuit court's ruling that defense counsel engaged in misconduct during the trial. In her posttrial motion, the plaintiff alleged that defense counsel committed "ongoing, continuous misconduct" throughout trial. In its order, the circuit court explained its agreement that a new trial was warranted by defense counsel's conduct during the trial in only a few words: "Considering the totality of the evidence and the conduct of the case."

¶ 34     While we owe deference to the trial court's exercise of its discretion, our examination of the record fails to reveal the "conduct of the case" by defense counsel that substantially prejudiced the jury against the plaintiff to warrant a new trial. See *Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 601 (2008) ("Generally, a reviewing court will not find reversible error due to improper comments by counsel unless a party has been substantially prejudiced by such comments."). Nor does the plaintiff's brief assist our examination of the record for the prejudicial misconduct. Without pinpoint citation to the record, the plaintiff contends that defense counsel "engaged in an ongoing pattern of misconduct which was intended to and did, demean the plaintiff's counsel, their witnesses and their case." The plaintiff cites *U.S. Bank v. YMCA of Metropolitan Chicago*, 409 Ill. App. 3d 548 (2008), and *Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13 (2009). Neither of the cited cases provides guidance in our review of purported misconduct by defense counsel in the instant case. We also note that following an on-the-record exchange between plaintiff's counsel and defense counsel, the trial judge instructed the jury to disregard the verbal scuffle between the lawyers. See *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 383 (2003) (instructing the jury to

disregard remarks cures their prejudicial impact). Following the court's admonishment, no similar outburst by counsel occurred.

¶ 35 Our review of the record leaves us with substantial doubt that a new trial was warranted based on the "totality of the evidence and the conduct of the case." We cannot defer to the circuit court's ruling when neither its order nor the record supports its ruling. See *First National Bank of La Grange v. Glen Oaks Hospital & Medical Center*, 357 Ill. App. 3d 828, 842 (2005) (no prejudicial error shown where alleged misconduct by counsel was unsupported by record).

¶ 36 We reverse the grant of a new trial on the issue of damages based on the purported misconduct by defense counsel.

¶ 37                                             Remedy

¶ 38 Finally, the defendant argues that the circuit court abused its discretion in granting a new trial on damages only. According to the defendant, the circuit court should have either reinstated the original damages award without reduction for the fault of 49% attributed to Marilee or ordered a new trial on all issues. The defendant argues the errors cited by the circuit court to grant a new trial do not support a new trial on the issue of damages only.

¶ 39 A trial judge's decision to grant a new trial is reviewed for an abuse of discretion. *Bisset v. Village of Lemont*, 119 Ill. App. 3d 863, 865 (1983). "We allow greater latitude to the circuit court in determining that a new trial is warranted than in denying a request for a new trial." *Boren v. BOC Group, Inc.*, 385 Ill. App. 3d 248, 254 (2008). A retrial on damages only is an exception to this general rule.

> "A new trial on the question of damages only is appropriately granted 'where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability.' " *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451, 456 (1979) (quoting *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224 (1978)).

¶ 40 The trial court's order gave no explanation for the remedy of a new trial on damages only. While an appellate court reviews the trial court's judgment, not its reasoning (*Forsberg v. Edward Hospital & Health Services*, 389 Ill. App. 3d 434, 440 (2009)), an expression of its reasoning assists our review. To justify a new trial on damages only, the "questions of damages and liability [must be] separate and distinct." (Internal quotation marks omitted.) *Hollis*, 108 Ill. 2d at 408. The plaintiff must also demonstrate "that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." (Internal quotation marks omitted.) *Id.* That is, that the verdict "was not a compromise of liability against damages." *DeFreezer v. Johnson*, 81 Ill. App. 2d 344, 348 (1967).

¶ 41 In light of our ruling that a new trial was not warranted on the purported misconduct of

defense counsel, we limit our review of the circuit court's ruling granting a new trial on damages only to whether that remedy was warranted by the erroneous instruction on contributory negligence.

¶ 42    Generally, if a verdict is tainted by an erroneous instruction then the entire verdict is called into question, unless the instruction pertains to the issue of damages. See *Balestri*, 76 Ill. 2d at 455-56 (jury instruction did not adequately instruct the jury on aggravation of a preexisting condition, justifying a new trial on damages only). It is beyond contention that contributory negligence affects the apportionment of liability, not the calculation of damages. *Alvis v. Ribar*, 85 Ill. 2d 1, 25 (1981). The plaintiff contends the contributory negligence instruction served to taint the jury's determination of damages, without citation to the record, and without explaining, in an "identifiable manner," how the jury's determination of damages was tainted.[3]

¶ 43    The defendant, on the other hand, cites *Junker v. Ziegler*, 113 Ill. 2d 332 (1986), for its contention that the appropriate remedy for the jury being erroneously instructed on contributory negligence is to reinstate the original damages award, rather than grant a new trial on damages only. In *Junker*, the circuit court ruled the jury's apportionment of fault of 65% to the plaintiff was against the manifest weight of the evidence. *Id.* at 340. The lower court granted a new trial on all issues. *Id.* at 337. The appellate court reversed, directing that judgment be entered on the jury's verdict. *Id.* The supreme court held that a new trial was warranted on all issues, except on the question of damages. *Id.* at 340. The supreme court rejected the plaintiff's contention that "the jury's calculation of damages was affected by its assessment of his contributory negligence." *Id.* The supreme court reversed "the trial court's order granting a new trial on the issue of damages." *Id.* at 342. The original jury's damages award would stand, modified by any contributory negligence attributed to the plaintiff as determined in the new trial. *Id.* at 341.

¶ 44    The case at bar is unlike *Junker*, where the jury's apportionment of fault attributed to the plaintiff was found to be against the manifest weight of the evidence. *Id.* at 340. No such claim is before us. Nor, as the supreme court wrote, did the plaintiff in *Junker* "allege any evidentiary or instructional error." *Id.* at 340. Here, the verdict is in accord with the evidence, but the circuit court determined that a new trial was warranted based on an erroneous instruction to the jury. Therefore, the remedy ordered by the supreme court in *Junker* to reinstate the original damages award is not warranted here.[4]

¶ 45    We conclude the only fair remedy in this case is to order a new trial on all issues. It

---

[3]At oral argument, the plaintiff argued for the first time that the contributory negligence instruction made the "stigma" of suicide an issue in the case. This argument is both untimely and unpersuasive in the absence of supporting authority. See *Snover v. McGraw*, 172 Ill. 2d 438, 449 (1996) (argument not raised in motion for a new trial is waived).

[4]For much the same reason, we find the defendant's reliance on *Snover v. McGraw*, 172 Ill. 2d 438, 446-47 (1996), misplaced where the supreme court affirmed the circuit court's rejection of the plaintiffs' contention that the damages award of $0 for pain and suffering was neither against the manifest weight of the evidence nor inconsistent with the award for medical expenses.

appears this is the first case where the circuit court found the "devoid of reason" standard to apply. The outcome in this case on retrial may well provide guidance should similar cases arise. We note that by the very nature of suicide cases, where the decedent was unable to exercise ordinary care for herself, it will be rare where damages and liability are so separate and distinct as to warrant a new trial on the issue of damages only. See *Balestri*, 76 Ill. 2d at 456.

¶ 46    The circuit court abused its discretion when it concluded that the erroneous instruction on contributory negligence impacted the jury's calculation of damages when no record evidence supports that conclusion. A new trial on all issues necessarily follows from our holding.

¶ 47                                    CONCLUSION

¶ 48    The circuit court did not abuse its discretion in granting the plaintiff a new trial on her posttrial motion when the court determined that it erred in instructing the jury on contributory negligence where the jury found Northwestern Memorial liable in the suicide of the plaintiff's decedent and the record evidence supported the court's ruling that the plaintiff's decedent was completely devoid of reason at the time of her suicide. However, the court abused its discretion in limiting a new trial to the issue of damages only when the record fails to support the conclusion that the contributory negligence instruction impacted the jury's calculation of damages. We find no evidence in the record to support the circuit court's ruling that defense counsel's conduct during the trial substantially prejudiced the jury against the plaintiff; we reverse the order granting a new trial on that ground as an abuse of discretion.

¶ 49    Affirmed in part and reversed in part; cause remanded.