McKinney, J.,
delivered the opinion of the Court.
This was an action on the case, to recover damages for an injury to the person of the plaintiff, whereby he was dismembered of a limb; verdict and judgment were rendered for the defendants. The injury was received in the year 1838, when the plaintiff was an infant of but little more than three years of age; and in 1856, shortly after arriving’ at full age, he brought this action.
The injury occurred in this way: The defendants were owners of a paper-mill in Nashville, on Water street, on the bank of Cumberland river, the machinery of which was propelled by steam. Connected with the mill, machinery had been constructed to draw up wood from the river, on a truck. This consisted of a shaft, proceeding from the engine room of the mill, and extending through the wall of the mill-house. On the end of this shaft, and outside of the wall, some eight or ten inches, was fixed a cog-wheel, about twenty-six inches in diameter, which was geared into another cog-wheel, for the purpose of moving the truck. The wheels revolved from ten to twenty inches from the ground, and worked upwards and outwards. They were about twenty feet from the \street, in an open space, entirely exposed without any cover, guard, or enclosure whatever.
The plaintiff’s mother lived on the other side of *615 Water street, nearly opposite the paper-mill. These wheels were applied to other purposes than running the truck, and were generally in motion. In the fall of 1838, at a time when the engineer and most of the other hands were absent at dinner, leaving the wheels running, the plaintiff was caught by them, and thrown behind the wheel next to the wall, and his right leg was crushed between the knee and ankle, so that it remained attached only by a portion of the muscle and skin, and had of necessity to be amputated.
The proof shows that the wheels might have been boxed at a very trifling expense; or an enclosure made around them, so as to have been secured against the possibility of injury to any one. The proof likewise shows, that the “ plaintiff, and other children played about the mill almost every day.” It is proved that the defendant, Whiteman, who had the sole management of the establishment, and who was generally at the mill, was a careful, prudent man. Several of the defendant’s witnesses were of opinion,' that there was no necessity for boxing or enclosing the wheels; that there was no reasonable ground to apprehend danger from leaving them exposed, so near to the street, as no one could be injured by the wheels, unless in getting underneath them. It is also shown, that the neighborhood around the mill, at that time, was very sparsely populated.
The foregoing is the substance of the proof. The Court instructed the. jury, “That they should look to all the facts of the case; the locality and character of the machinery exposed; the manner of using it; its liability to' do mischief, &c.; and ask themselves. the *616 question, whether, in their opinion, a man of ordinary sense, prudence and diligence, having a proper regard for the safety of others, would have been content to leave the machinery exposed as it was, at the place it was, without apprehension of danger therefrom.”
For the plaintiff, it is insisted, that the 'instruction given to the jury was improper; and that the verdict was contrary both to the law and evidence.
It may be proper to remark at the outset, that the delay of the plaintiff, for ' a period of some eighteen years, to bring suit for the injury received, though a matter, if not satisfactorily accounted for, proper to be taken into consideration by the jury, in estimating the damages, can have no influence upon the question, as to his right to maintain the action. The plaintiff might have sued by proohein ami, at any time during minority; or, he might decline doing so, and bring his suit au any time within one year after arriving at age, "as he elected to do.
The objection to the charge is, that it leaves the determination of the law, as well as the facts of the case, to the jury.
In trials by jury, the Court is to decide questions of law; and the jury, 1 questions of fact; what are called mixed questions, consisting of both law and fact, as questions in respect to the degree of care, skill, diligence, &c., required by law in particular cases, are to be submitted to the jury, under proper instructions from the Court, as to the rules and principles of law by which they are to be governed in their determination of the case. The truth of the facts and circumstances offered in evidence, in support of the allegations on the record, *617 must be determined by the jury. But it is for the Court to decide, whether or not those facts and circumstances, if found by the jury" to be true, are sufficient, in point of law, to maintain the allegations in the pleadings. And this must be done in' one of two modes; either the Court must inform the jury, hypothetically, whether or not the facts which"-the evidence tends to prove, will, if established in the opinion of the jury, satisfy the allegations; or, the jury must find the facts specially, and then the Court will apply the law, and pronounce whether or not the facts so found are sufficient to support the averments of the parties. 1 Starkie’s Ev., 447. The principles of law by which the jury must be governed in finding a verdict, cannot be left to their arbitrary determination. The rights of parties must be decided according to the established law of the land, as declared by the Legislature, or expounded by the Courts, and not according to what the jury, in their own opinion, may suppose the law is, or ought to be. Otherwise, the law would be as fluctuating and uncertain as the diverse views and opinions of different juries in regard to it. In this view, we think, the charge is justly exceptionable.
We are of opinion, likewise, that the verdict is against the evidence. According to the maxim of the common law, sic utere tuo ut alienwn non Icedas, every person is responsible in law for the consequences of his own negligence. Broom’s Legal Maxims, (Am. ed. of 1854,) 253. And the proper criterion for determining the liability of the party is, whether he has been guilty of gross negligence, viewing his conduct with reference to the caution which a prudent' man would, under • the *618 given circumstances, have observed. Ib. Where a person uses bis own property carelessly and negligently, and without a reasonable degree of care and caution not to injure others, where injury is likely to ensue, he is not only civilly, but, in some cases, criminally responsible for the consequences. And this upon the principle, that a gross disregard of the interests of others is not distinguishable, either in point of moral guilt, or evil results, from a malicious intention to injure. 2 Starkie’s Ev., 526. The cases in support of this general doctrine are very numerous. In Coupland v. Hardingham, 3 Campb., N. P., 398, which was an action on the case .for negligence in not l’ailing or guarding an area in front of defendant’s house; and the plaintiff, passing by at night, fell into it, and had his arm broken. The defence was, that the premises had been in that condition for many years before the defendant went into possession of them. But Lord Ellenborough held, that the defendant, as soon as he took possession, was bound to guard against the danger to which the public had been before exposed, and that he was liable for the consequences of having neglected to do so; that the area belonged to the house, and it was a duty which the law cast upon the occupier of the house to render it secure. The books are full of cases in support of this general principle.
In the argument for the defendants, the applicability of this doctrine to the case under consideration, rather than its correctness, is controverted. The ground of defence is, that the injury was occasioned, not by any negligence or want of proper care on the part of the defendants, but solely by the gross negligence and wilful misconduct of the plaintiff himself, who was a trespasser *619 on defendant’s property, and whose own wrongful act was the immediate cause of the injury.
It is certainly true, in general, that if a party, by his own gross negligence, brings an injury upon himself, or contributes to such injury, he cannot recover; for, if by ordinary care and prudence he might have avoided it, he must be regarded as the author of his own misfortune. But an important and well established qualification of this principle is, that the mere want of a superior degree of care or diligence cannot be set up as a bar to the plaintiff’s claim for redress; and that although the plaintiff may himself have been guilty of negligence, yet unless he might, by the exercise of ordinary care, have avoided the consequence of the . defendant’s negligence, he will be entitled to recover. Lynch v. Nurdin, 1 Ad. & Ellis N. S., 29; Eng. C. L. R., vol. 41, p. 422; 3 M. & W., 248; 22 Vermont R., 214. It is likewise true, that in cases of mutual negligence, where the parties are equally blameable, there can be no recovery.
The case of Hartfield v. Roper, 21 Wendell’s R., 615, is relied on by the defendant’s counsel to establish the proposition, that an infant of tender years, who has received an injury by his own gross negligence, which might have been avoided by ordinary care, is as much precluded from a recovery as an adult. That case does decide, where a child of such tender age (two years old) as not to possess sufficient discretion to avoid da.nger, is permitted by his parents to be in a public highway, without any one to take care of him, and is there run over by a traveller and injured, there can be no recovery, unless the. injury was voluntary, or was *620 owing to culpable negligence on tbe part of the defendant. The principle announced is, that though the ehild be incapable of the exercise of ordinary care himself, yet he is chargeable with the want of such care on the part of his parents, whose duty it was to guard him from exposure to danger until he should become capable of taking care- of himself.
This decision is no less opposed to the current of authority upon the point, than to every principle of reason and justice. It is, literally, to visit the transgression of the parent upon the child.
Lord Denman lays it down in Lynch v. Nurdin, above cited, that “ ordinary care must mean that degree of care which may reasonably be expected from a person in the plaintiff’s situation.” To exact of the plaintiff a degree of caution and prudence, which he could not possibly be possessed of, would' be an absurdity. In Lynch v. Nurdin, the facts briefly were, that the defendant’s servant negligently left his horse and cart in the street, with no one to take care of them. Plaintiff, a child seven years of age, got upon the cart in play; another child led the horse on, and the plaintiff in getting off, fell and was run over, and had his leg broken. It was held, that plaintiff was entitled to recover, notwithstanding that, by his positive wrong in getting upon the cart, he was the co-operating cause of his own misfortune, Lord Denman was of opinion, that no greater degree of care was to be required of him than was compatible with his age and capacity; and that if, in getting on the cart, he merely indulged the natural instinct of a child, in amusing himself with the empty cart, the defendant could not avail himself of that fact; that as *621 tbe most blameable carelessness of tbe servant tempted the child, be was tbe real and only canse of tbe mischief.
So in Illidge v. Goodwin, 5 C. & P., 190, tbe defendant’s cart and horse were left in tbe street unattended, and a person passing by whipped tbe horse, and caused him to back tbe cart against tbe plaintiff’s window, it was held that tbe defendant was liable. Tindal, C. J., said, “If a^man chooses to leave a cart standing in. the street, be must take the risk of any mischief that may be done;” and that tbe wrongful act of the, person in whipping the horse was no defence. In Dixon v. Bell, 2 M. & S, 198, the. defendant sent a servant girl, thirteen years of age, to bring a loaded gun, with direction to the person in whose possession it was, to take out the priming, which he did; and the girl, in play, pointed the gun at plaintiff’s son, a child of some eight or nine years of age, and, drawing the trigger, it went off and injured the child. Lord Ellenborough held, that by the defendant’s neglect to discharge the gun, he had left it in a state capable of doing mischief; and the law, therefore, held him responsible. In Robinson v. Cone. 22 Vermont Rep., 214, a child of less than four years of age was amusing himself sliding down a hill in the public highway; the defendant was driving a sleigh rapidly down the hill, and the plaintiff’s left leg was caught by one of the runners of the sleigh, and fractured so as. to require amputation. In answer to the argument, that the injury to the plaintiff was caused-by his own negligence and wrong, the Court said, that although a- child of tender years be in the highway, through the fault or negligence of his parents, and so *622 be improperly there, yet if he be injured through the negligence of the defendant, he is not precluded from redress; that, in such case, the defendant is bound to a proportionate degree of watchfulness; and what would be but ordinary neglect in regard to one whom the defendant supposed a person of full age and capacity, would be gross neglect as to a child, or one known to be incapable of escaping danger. Bass v. Litton, 5 C. & P., 407. And that a child of tender years is not bound to the same rule of care and diligence in avoiding the consequence of the neglect of others, which is required of persons of full age. That all that is demanded in such cases, is a degree of care or diligence equal to the capacity of the child. So, where the defendant had a gate upon his own land, through which the plaintiff, a child of six or seven years, and other children, were accustomed to pass; and the plaintiff in passing, without license, shook the gate, and it fell upon him and broke his leg; the defendant was held liable. 19 Conn. R., 507.
These cases rest upon the principle, that the law imposes restrictions upon every one, as well in the use and enjoyment of his property, as in his personal actions and conduct; and that, though a man do a lawful thing, yet if any damage thereby befalls another, -he shall be answerable, if ho might have avoided it. Broom’s Legal Maxims, 248.
The doctrine of these cases is not in conflict with the general principle, that a person shall not recover for an injury brought upon himself by his own want of reasonable care and prudence, or which his want of ordinary care contributed. to produce, or where the parties must *623 be viewed as equally culpable. It is but a qualification of the principle, founded upon a just distinction, i Both parties may be in fault, in omitting the exercise of proper diligence; but not equally so, either as respects the degree of negligence, or the capacity, mental or physical, to have prevented or escaped the injury. And, therefore, he shall be considered the author of the mischief by whose first or more gross negligence it has been effected, j
The doctrine has been carried further in one class of cases, and to the extent that even wilful misconduct, on the part of the plaintiff, will not necessarily exclude him , from the right to sue. As in cases where spring-guns and dangerous instruments have been set upon one’s own ground for the protection of his property; and persons, without notice, by trespassing on the grounds, have been seriously injured. The case of Bird v. Halbrook, 4 Bing., 628, is an illustration of the application of the doctrine. In that case the defendant set a spring-gun, without notice, in a walled garden at a distance from his house, for the protection of his property, some of which had been stolen; and the plaintiff, who climbed over the wall ip pursuit of a stray fowl, having been shot and seriously injured, the defendant was held liable.
But it is unnecessary to refer to other cases upon this subject. We feel clear, upon the facts proved in this record, that the defendants were guilty of negligence — perhaps it might be said of gross negligence— in leaving the machinery so exposed as that, by possi bility, it might be the cause of injury to others. And neither the negligence of the parent, in suffering the child to play about the mill, nor the supposed wrongful *624 act of the plaintiflf himself, in trespassing upon the defendant’s property, can excuse them from liability. In playing about the cog-wheels, the plaintiff was “but indulging the natural instinct of a childbut yielding to the temptation into which he was led by the negligence of the defendants.
And we think it was the duty of the Court to have instructed the jury specifically, as a matter of law, that the facts stated, if true, constituted that degree of negligence which would render the defendants liable in damages.
Judgment reversed.