Feldman, Appellant, *v.* Howard et al., Appellees.

(No. 7952—Decided January 25, 1966.)

*Messrs. Volkema, Redmond & Wolske,* for appellant.
*Messrs. Wiles, Doucher, Tressler & Martin,* for appellee
Lloyd W. Howard, Jr.

*Mr. Clifford L. Rose* and *Mr. Walter J. Siemer,* for appellees Northway Taxicab Company and William N. O'Hara.

GRAY, J.   This matter is in this court on an appeal on questions of law from a judgment of the Common Pleas Court of Franklin County.   A verdict was directed as to each of the three defendants at the conclusion of plaintiff's case.

It appears from the record that plaintiff, a woman fifty-two years of age at the time of the accident, was a mentally incompetent person living in the home of Mrs. Grace McCaskill, 184 E. Fifteenth Ave., Columbus, which home was supervised by the Social Services Section of the Columbus State School.

It is alleged in the petition as follows:

"Plaintiff further says that on or about the 27th day of December, 1959, she was mentally incompetent having been adjudicated an epileptic and committed to the Gallipolis State Institute on January 7, 1930, that she was transferred to Columbus State School on July 9, 1957, * * *."

On the night of December 27, 1959, plaintiff, along with other women of similar mental condition, attended church on East Blake Avenue in Columbus.

About 10 p. m. defendant Northway's cab arrived at the church to transport them home.   The plaintiff rode in the rear seat with Mrs. McCaskill.

The cab driver stopped across the street from 184 E. Fifteenth Ave.   Plaintiff alighted from the cab on the right side thereof, went to the front of the cab and started across the street; and, while in the street, she was struck by a motor vehicle operated by defendant Lloyd W. Howard, Jr.   As a result thereof she suffered serious injuries.

The evidence shows that the night was dark and rainy, that she was struck in a poorly lighted area not at or near a crosswalk and that there were crosswalks at either end of the block which was of ordinary length.

Plaintiff alleges in her petition that:

"* * * defendants William N. O'Hara and Northway Taxicab Company were negligent in failing to exercise care for the safety of their passengers, particularly this plaintiff."

Plaintiff further alleges in her petition that:

"* * * the defendant Lloyd W. Howard, Jr., was negligent toward the plaintiff in failing to yield the right of way to the plaintiff; in failing to maintain a lookout for pedestrians, particularly the plaintiff; in driving at an excessive rate of speed, to-wit: 50 m. p. h.; in failing to abate said speed; and in failing to divert the course of travel of said Oldsmobile to avoid striking the plaintiff. * * *"

The assignments of error are as follows:

1. The court improperly directed a verdict for the defendants William N. O'Hara and Northway Taxicab Company.

2. The court improperly directed a verdict for the defendant Lloyd W. Howard, Jr.

3. The court improperly refused to set forth in writing separate findings as to fact and law requested by plaintiff.

4. The court improperly refused to allow certain testimony of Dr. Roger Gove in regard to plaintiff's mental capacity and effect of a seizure on an epileptic.

5. The court improperly refused to allow Mrs. McCaskill to testify that plaintiff had two epileptic seizures during the day of December 27, 1959.

6. The court improperly allowed a police officer to testify as to there being no traffic violation on the part of defendant Lloyd W. Howard, Jr.

The liability of defendant Lloyd W. Howard, Jr., will be discussed first. There is no evidence that this defendant ever knew or had met plaintiff prior to December 27, 1959; so he could not have known of her mental condition. According to the record, the first time he saw her was when she was just a few feet in front of his automobile just prior to impact.

Section 4511.48, Revised Code, reads, in part:

"Every pedestrian crossing a roadway * * * at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all traffic operating lawfully upon the roadway.

"* * *

"This section does not relieve the operator of a vehicle, streetcar, or trackless trolley from exercising due care to avoid colliding with any pedestrian upon any roadway."

Section 4511.50, Revised Code, reads, in part:

"No pedestrian shall cross a roadway within a municipal corporation at a place other than a crosswalk except when crosswalks are an unreasonable distance apart."

Crossing a street in a municipal corporation at a point other than at a crosswalk is negligence per se. See *Smith* v. *Zone Cabs,* 135 Ohio St. 415.

Even though she was guilty of negligence per se, it must still be determined whether such negligence was the proximate cause of her injuries. The Supreme Court, in *Smith* v. *Zone Cabs,* 135 Ohio St. 415, has spoken on this point in the following manner:

"The law presumes negligence from appellant's violation of the ordinance (*Schell* v. *DuBois, Admr.,* 94 Ohio St. 93, 113 N. E. 664, L. R. A. 1917A 710), but does not, from that presumption alone, presume that such negligence was the proximate cause of his injuries. Although the former is presumed as a matter of law, the latter must be proved as a matter of fact. 'Proximate cause and negligence are wholly different elements and should not be confused.' *Blackford* v. *Kaplan, ante,* 268, 273."

Testimony of Dr. Gove, a psychiatrist, who treated plaintiff, was proffered but not admitted in the trial court. Part of his testimony was that plaintiff had the approximate mentality of a ten-year-old child.

The question now arises: By what standard shall we judge plaintiff in reference to her conduct in crossing the street at the time and place she was struck by the automobile driven by defendant Howard?

A majority of the courts passing on this question hold that evidence of mental derangement not amounting to total insanity should be considered by the jury in determining whether a plaintiff was contributorily negligent or not.

We believe that the plaintiff should be held to the exercise only of such faculties and capacities with which she is endowed by nature for the avoidance of danger.

While the evidence indicates that her actions were voluntary, even though impulsive and irrational in the sense of acting without forethought, it is apparent from the record that reasonable minds might differ upon the question of plaintiff's ac-

countability for her own actions; and, therefore, the question is one of fact which should have been submitted to the jury.

See *Baltimore & Potomac Rd. Co.* v. *Cumberland* (1900), 176 U. S. 232, 44 L. Ed. 447, 20 S. Ct. 380; *Seattle Electric Co.* v. *Hovden* (C. C. A. 9, 1911), 190 F. 7; *Noel* v. *McCaig* (1953), 174 Kan. 677, 258 P. 2d 234. We think the proposition here under discussion is very well stated in 38 American Jurisprudence 882, Section 201.

The trial court was requested to find conclusions of fact separately from conclusions of law and, in accordance with such request, found, in part, as follows:

"And further, that there is no evidence that the defendant Howard had any knowledge whatsoever as to the defendant's [*sic*] disability and that so far as he was concerned, she would be guilty of negligence as a matter of law and preclude her from recovering against Mr. Howard."

That was the sole ground stated by the trial court for its action in directing a verdict in favor of defendant Howard.

For the trial court to find that this mentally-deficient plaintiff was guilty of negligence as a matter of law, under the state of the record delineated above, was erroneous, and especially so when the trial court found plaintiff guilty of such negligence without recognizing that a question of fact remained to be determined by the jury as to whether such negligence on the part of plaintiff was the proximate cause of her injuries. See *Smith* v. *Zone Cabs,* 135 Ohio St. 415.

Since the trial court did not admit the testimony proferred in regard to plaintiff's mental competency, and since it directed a verdict in favor of defendant Howard and did not permit the submission to the jury of the question of the accountability of plaintiff for her actions at the time she was struck by the automobile operated by defendant Howard, the trial court committed prejudicial error which requires the reversal of its judgment in regard to defendant Howard.

We shall now advert to the matter of the liability of defendants O'Hara and Northway Taxicab Company. O'Hara is charged with failing to exercise care for the safety of this plaintiff. Expanding this, it is fair to state that plaintiff's contention is that O'Hara should have seen plaintiff to her doorstep

or, at least, should have discharged plaintiff on the side of the street nearest her home.

There is the claim that plaintiff was entitled to special consideration at the hands of O'Hara because she was mentally incompetent and unable to take care of herself and that this was known to O'Hara.

Plaintiff was not called to testify. Mrs. McCaskill, the "house mother," stated that O'Hara had transported plaintiff as a passenger on other occasions; and this has been urged by plaintiff to establish the fact that O'Hara knew of her mental deficiency. Such knowledge of plaintiff's condition was stoutly denied by O'Hara. He testified that plaintiff was the last one out of the cab and that she was the one who paid him. He testified further that he didn't carry on a conversation with his passengers and did not notice anything unusual about their behavior.

We believe that certain selected portions of the record should be reproduced here. Mrs. McCaskill testified as follows:

"Q. Where was Wilma Patton and Sylvia [the plaintiff], when you pushed Sadie on the sidewalk? A. I left them in front of the cab, the cab light was on and Sylvia didn't pay any attention to what I said.

"Q. What did you say? A. I said, 'For you to stay here, don't come across the street,' and I was running all the time and pushed Sadie upon the walk and I turned around and waived my purse for him to stop.

"Q. Where were the other two girls? A. Patton was still standing in front of the cab, Sylvia just come right across, I told her to go back, go back.

"Q. Was Sylvia looking at you? A. No, she was just going right on across the street, wasn't paying a bit more attention than nothing.

"Q. You told Sylvia and you told the other girls to stay there, did you not? A. I did.

"Q. Now did you yell back across the street to Sylvia and to the other girls? A. I hollered for Sylvia to go back.

"Q. All right, did you yell loud enough so she could hear you? A. I sure did.

"Q. All right, then what did Sylvia do? A. She just kept a coming, never paid no attention.

"Q. Was she starting into the street when you yelled at her? A. Yes, done stepped out into the street.

"Q. Now where was Sylvia at that time? A. She was going across the street, just taking her time.

"Q. Taking her time? In other words, she wasn't in any hurry, she wasn't running? A. She never seen nobody, didn't seem like anybody knew anything, she was just walking.

"Q. She didn't look as she left the curb on the south side of the street? A. No.

"Q. Either to the left or to the right? A. No.

"Q. There was nothing wrong with Sylvia's eyesight, was there? A. Well, she had a seizure that afternoon about 2:00 o'clock.

"Q. Well, now, did you see the cab driver when these girls started scattering, did you ask the cab driver to help you with them, to help supervise them? A. No.

"Q. Didn't he? A. He didn't open the door, he didn't have time.

"Q. Why didn't you ask him and tell him that you needed help? A. Well, he had been helping me some, why should I ask him when I didn't have time to ask him.

"Q. In other words, when you saw these girls scattering and you couldn't handle them you didn't take time to say, 'Cab driver, help me.' You didn't have time to do that? (No answer.)"

Paragraph three of the syllabus of *Cleveland Ry. Co.* v. *Karbole,* 125 Ohio St. 467, reads as follows:

"When a passenger has alighted from a street car in safety, the relation of carrier and passenger ceases *eo instanti.*"

The next question that arises is: "What is a place of safety?" The Supreme Court has spoken on this point in *Dietrich* v. *Community Traction Co.,* 1 Ohio St. 2d 38. At page 42, the court, through Matthias, J., says:

"* * * A passenger is not discharged at a 'reasonably safe place' merely because there is no hazard at the precise spot he alights. * * * What is reasonably safe depends upon the prob-

ability of injury to passengers and the likely seriousness of injury if it occurs. * * *''

And, on page 43, Judge Matthias said:

''* * * If defendant breaches its duty to afford a passenger the opportunity to alight in a safe place and the passenger is injured as a proximate result thereof, it is no defense that at the time the threatened harm became actual harm the injured party was no longer a passenger but a pedestrian. * * *''

From the above testimony we can come to no other conclusion except that reasonable minds might differ on the question of the liability of defendant O'Hara and defendant Northway Taxicab Company. Therefore, the matter of the liability of defendant O'Hara and defendant Northway Taxicab Company is a question which should have been submitted to the jury. Such being our decision, we hold that the trial court committed prejudicial error in directing a verdict in favor of defendants O'Hara and Northway Taxicab Company.

The judgment of the trial court is, therefore, reversed in regard to directing verdicts in favor of all three defendants. This cause is remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

BROWN, P. J., and CARLISLE, J., concur.

BROWN, P. J., CARLISLE and GRAY, JJ., of the Fourth Appellate District, sitting by designation in the Tenth Appellate District.