ALLEN D. HEFLIN and wife,      )
JEAN LaRUE HEFLIN, as Natural    )
Parents and Next-of-Kin of       )
HUGH ALLEN HEFLIN, Deceased, )
     Plaintiffs/Appellants,     )
                                )    Stewart Circuit
                                )    No. 1730
VS.                          )
                                )    Appeal No.
                                )    01-A-01-9504-CV-00131
STEWART COUNTY, TENNESSEE,   )
a Political subdivision of the State of  )
Tennessee; DAVID HICKS, in his   )
official capacity as Sheriff of Stewart )
County, Tennessee; JOHN S. WATKINS, )
JOE HENRY CRUTCHER and WANDA )
LUFFMAN, in their official capacities as )
Deputy Sheriffs for the Stewart County )
Sheriff's Department; LEON HOLLIS,  )
DALTON BAGWELL and GREG    )
BARROW, in their official capacities as )
employees of the Stewart County    )
Ambulance Service,              )
     Defendants/Appellees.    )

**FILED**

**Oct. 20, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT OF STEWART COUNTY
AT DOVER, TENNESSEE


HONORABLE ROBERT E. BURCH, JUDGE

JOSEPH H. JOHNSTON
P.O. Box 120874
Nashville, Tennessee 37212
ATTORNEY FOR PLAINTIFFS/APPELLANTS


George A. Dean
PARKER, LAWRENCE, CANTRELL & DEAN
200 Fourth Avenue North, 5th Floor
Nashville, Tennessee 37219
ATTORNEY FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED

                      HENRY F. TODD
                      PRESIDING JUDGE, MIDDLE SECTION

SAMUEL L. LEWIS, JUDGE, CONCURS
WILLIAM C. KOCH, JR., JUDGE, FILES SEPARATE CONCURRING OPINION

| ALLEN D. HEFLIN and wife, | ) | |
| JEAN LaRUE HEFLIN, as Natural | ) | |
| Parents and Next-of-Kin of | ) | |
| HUGH ALLEN HEFLIN, Deceased, | ) | |
| Plaintiffs/Appellants, | ) | |
| | ) | Stewart Circuit |
| | ) | No. 1730 |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01-A-01-9504-CV-00131 |
| STEWART COUNTY, TENNESSEE, | ) | |
| a Political subdivision of the State of | ) | |
| Tennessee; DAVID HICKS, in his | ) | |
| official capacity as Sheriff of Stewart | ) | |
| County, Tennessee; JOHN S. WATKINS, | ) | |
| JOE HENRY CRUTCHER and WANDA | ) | |
| LUFFMAN, in their official capacities as | ) | |
| Deputy Sheriffs for the Stewart County | ) | |
| Sheriff's Department; LEON HOLLIS, | ) | |
| DALTON BAGWELL and GREG | ) | |
| BARROW, in their official capacities as | ) | |
| employees of the Stewart County | ) | |
| Ambulance Service, | ) | |
| Defendants/Appellees. | ) | |

# O P I N I O N

The captioned plaintiffs have appealed from the dismissal of their suit against the defendant, Stewart County, Tennessee, arising out of the suicide of Hugh Allen Heflin in the Stewart County Jail. No complaint is made on appeal as to the summary dismissal of all other defendants. This suit is limited to damages for pain and suffering of deceased. Damages for wrongful death have been recovered in federal court.

The Trial Court heard the suit against the County without a jury under the Governmental Tort Liability Act, found that death of deceased was due to 60% fault of the deceased and 40% fault of governmental employees, and dismissed the suit.

## -The Facts-

On September 3, 1987, deceased was arrested and incarcerated in the Stewart County jail about 8:00 A.M. Thereafter, he was observed by a jail employee at 8:57, 9:40, 10:31 and 11:15 A.M. At 12:06 P.M., the deceased was found hanging from the top of his shower stall

by means of a noose of strips of bed sheet around his neck. His hands and feet were bound together with strips of bed sheet, and a washcloth or towel was stuffed in his mouth. The water was running in the shower stall. Deceased was unconscious when found; and, at 12:30 P.M., he was pronounced dead by strangulation.

In September, 1987, the written policies of the Stewart County Jail required:

> For the preservation of security and maintenance of order, every inmate will be classified upon admission to this facility and will be assigned housing according to the classification.
>
> . . . .
>
> This facility will make every reasonable effort to provide separate housing for each of the following categories of inmates:
>      . . . Inmates with special problems (e.g. alcoholics, narcotic addicts, mentally disturbed inmates, inmates with communicable diseases)  . . .
>
> 1.  Review of Records:  The Chief or the booking officer will review the admissions records and any existing facility records concerning the inmate for the following information:  . . .
>    i.  Evidence of suicidal tendency
>
> 2.  <u>Classification:</u>  The booking officer will assign the inmate a classification code in the order listed below:  . . .
>    e.  Special Problem  -"SP" (special problem)
>                     -"T"  (trusty)
>
> . . . .
>
> 1.  All incoming inmates will be classified according to the classification code during the booking process, utilizing all known information at the time of  booking.  The classification system is described in POLICY (1) of this chapter.

On September 3, 1987, the records of the office of Sheriff of Stewart County contained the following:

> 6/22/85.  Mont. Co. advised this dept. that they have a report of a Hugh Heflin at Memorial Hospital emergency room of an attempted suicide.  Mont. Co. wanted to know if we were aware of situation.  10-50

The Sheriff testified:

> Q. Do you know whether he was taken, as a matter of fact, to the psychological clinic -- to the Dover Psychological Clinic in the spring of 1987?
>
> A. Yes, sir.
>
> Q. Do you know that he was taken there on more than one occasion?
>
> A. Yes, sir.
>
> . . . .
>
> Q. Is it usual for prisoners to be taken back and forth for psychological counseling while incarcerated in your jail?
>
> A. Yes, sir.

The Sheriff also testified of an occasion on June 8, 1987, when deceased made a disturbance in the "drunk tank" of the jail, and of an occasion when deceased had complained of abuse by an arresting officer, but the investigation revealed he had beaten himself.

Deceased was not classified as a "special needs prisoner," subject to observation every 15 minutes, but as an ordinary prisoner subject to hourly observation.

*-The Proceedings-*

The plaintiffs filed suit in federal court for violation of civil rights of deceased and obtained a jury verdict and judgment for $154,000.00 for wrongful death. However, damages for pain and suffering were not allowable under the federal statutes and were not included in the federal court judgment.

The present suit in the state court was amended to limit requested damages to pain and suffering suffered by deceased prior to loss of consciousness.

The Trial Judge filed the following "Findings of Fact and Conclusions of Law:"

1. The deceased was afraid to go to jail but the record does not show that this fact was communicated to the defendant's agents.

2. The deceased was a potential escape risk and defendant knew it.

3. The deceased had previously inflicted injuries upon himself while in jail and defendant was aware of this.

4. The defendant was aware that the deceased had emotional and drug problems and had been regularly visiting the mental health clinic during his last stay in the jail.

5. The deceased was well known to the Sheriff and his staff. They detected no change in his demeanor nor did his demeanor give them any reason to be on notice that the deceased intended suicide or any self-harm.

6. The deceased had apparently attempted suicide once before and this fact was on a complaint card in the Sheriff's office. The Stewart County Sheriff's Office was not involved in the investigation and it only came to their attention when Montgomery County called about it. The Sheriff is not chargeable with the knowledge of the prior suicide attempt.

7. The operations manual of the jail required that special needs prisoners be observed at least every 15 minutes.

8. The deceased was last seen at 11:30 a.m.

9. Trusty Richardson heard the shower running between 11:40 and 11:45.

10. The deceased was found at 12:06.

Having made the foregoing findings of fact, the Court now makes the following conclusions of law:

1. That the defendant was not on notice that deceased was a suicide risk.

2. That defendant was on notice that deceased was a risk to harm himself and, therefore, should have been classified as a special needs prisoner. He, therefore, should have been observed at least every 15 minutes.

3. If deceased had been observed every 15 minutes, he would have been discovered before he lost consciousness but the hanging probably would not have been prevented.

4. Double locking of the cell block was not a factor in the hanging. The sheet would have been seen.

5. Defendant breached duty to deceased.

6. Comparative fault does apply.
    a. This is not an intervening/superseding cause
    b. Deceased was responsible for his own actions. No indication of mental illness.

7. The Court finds deceased 60% at fault, with the remainder of the fault charged to Stewart County.

8. Damages for pain and suffering set at $5,000.
    a. Even if duty had not been breached, deceased would have sustained some of the roughly less than 20 minutes of pain. Defendant is responsible for that portion after the breach. This would be less than approximately 15 minutes.

9. The cap under the Tennessee Governmental Tort Liability Act. This is not the same cause of action. [sic]

Judgment was entered for the defendant County.

On appeal, plaintiffs present two issues, of which the first is:

I. Whether the Trial Court's application of Doctrine Modified Comparative Negligence to Apportion to Fault [sic] between the defendant's employees and the actions of plaintiffs' decedent which caused his self-inflicted injury was error as a matter of law.

Appellants insist that the doctrine of comparative negligence as declared in *McIntyre v. Balentine,* Tenn. App. 1992, 833 S.W.2d 52, is applicable only where both parties have engaged in some negligent conduct which proximately caused the injury and that the doctrine is inapplicable if one of the parties was innocent of negligence.

In *McIntyre,* the Court did say:

In Tennessee, the rule as initially stated was that "if a party, by his own gross negligence, brings an injury upon himself, or contributes to such injury, he cannot recover," for, in such cases, the party "must be regarded as the author of his own misfortune." *Whirley v. Whiteman,* 38 Tenn. 610, 619 (1858). In subsequent decisions, we have continued to follow the general rule that a plaintiff's contributory negligence completely bars recovery. . . .

Equally entrenched in Tennessee jurisprudence are exceptions to the general all-or-nothing rule: contributory negligence does not absolutely bar recovery where defendant's conduct was intentional, *see, e.g., Stagner v. Craig,* 159 Tenn. 511, 514, 19 S.W.2d 234, 234-35 (1929); *Memphis St. Ry. v. Roe,* 118 Tenn. 601, 612-13, 102 S.W. 343, 346 (1907); . . . . (Emphasis supplied.)

*McIntyre,* 833 S.W.2d at 54.

However, the quoted statements were a part of a review of the law prior to the quoted opinion. Nothing is found in that opinion indicating that it is inapplicable to intentional fault of the injured party.

-6-

Moreover, the rule in *McIntyre* is not limited to incidents of negligence, for it refers to both negligence and fault.  For example, the opinion states:

> Although we conclude that the all-or-nothing rule of contributory negligence must be replaced, we nevertheless decline to abandon totally our fault-based tort system.  We do not agree that a party should necessarily be able to recover in tort even though he may be 80, 90, or 95 percent at fault.  We therefore reject the pure form of comparative fault.
>
> . . . .
>
> In all trials where the issue of comparative fault is before a jury, the trial court shall instruct the jury on the effect of the jury's finding as to the percentage of negligence as between the plaintiff or plaintiffs and the defendant or defendants.  . . .

*McIntyre,* 833 S.W.2d at 57.

The word, fault, is broader than the word, negligence, and includes intentional acts.  It includes, "an error or defect of judgment or of conduct; any deviation from prudence, duty  or rectitude;" *Black's Law Dictionary,* Fourth Edition.

This Court views intentional fault of either party as being a circumstance which should be considered by the finder of fact in making a finding as to the degree of fault of each party producing the injury.

Plaintiffs next argue that public policy requires that comparative fault not be available to defendants having a duty to protect the injured party from intentional self-inflicted injury.  Appellants cite an unpublished opinion of this Court filed on November 18, 1988, wherein a prisoner sued for injuries received when court officers left him unsupervised in a conference room and he jumped through an open sixth floor window.  The Trial Court rendered summary judgment for the government.  This Court held that if self inflicted injury was reasonably foreseeable, the custodian did have a duty to protect, and that it was inappropriate to hold as a matter of law that the conduct of plaintiff was an independent intervening cause of his injury.  In the present case, the suit against the county was not dismissed by summary

judgment, but was heard upon the merits with the result stated above. The Trial Court evidently found some duty to protect, for it found the County 40% at fault.

While prison officials are not insurers of the safety of prisoners, they are obligated to exercise reasonable care to protect the life and health of persons in their custody. *Cockrum v. State,* Tenn. App. 1992, 843 S.W.2d 433.

Plaintiffs rely upon the finding of the Trial Court that the employees of the defendant County breached their duty of following their own rules designed to reduce the danger of self-inflicted harm. It should be emphasized that the duty of defendants was not to prevent harm to deceased, but to comply with the regulations designed to reduce the danger of harm. The defendant County was not an insurer of the safety of deceased.

It has been reasoned that comparative fault does not apply where the injury is due in part to an intentional act of the injured party, as in the case of a person who knowingly steps into the path of an unlawfully speeding vehicle. *Victor E. Schwartz, Comparative Negligence* § 5-4(c) 2d Ed., 1994.

In *Hickey v. Zezulka,* Mich. 1992, 487 N.W.2d 106, survivors sued Michigan State University for a suicide which occurred while deceased was in a holding cell on the university campus in the custody of campus police. The deceased was allegedly intoxicated. He was placed in the holding cell at 3:20 A.M. None of his personal articles, clothing or belt were removed in violation of an applicable policy requiring removal of objects which could harm an officer. The cell had a ten foot ceiling, a concrete bench and above it, metal brackets extending out from the wall. The custodial officer did not observe the prisoner from 3:20 A.M. until 3:57 A.M. when she found him hanging from the brackets by a noose composed of his belt. The Michigan Supreme Court held that the custodial officer was negligent in failing to remove the belt, but not guilty of such deliberate indifference as would render her

unconditionally liable.  The first opinion of the Court then stated that the failure to remove

the belt and failure to timely observe "created a stimulus for the plaintiff's act" so as to

remove the defense of independent intervening act, and that the refusal of a charge on

independent intervening act should be affirmed.

The first opinion of the Michigan Supreme Court then states:

> The signers of this opinion also agree with the Court of
> Appeals that a comparative negligence instruction is improper
> in a jail suicide case, *Hickey, supra* at 617, 443 N.W.2d 180.
> The standard jury instruction requested by Zezulka provides as
> follows:
>> "*Plaintiff's negligence,* if any, does not bar a
>> recovery by the plaintiff against the defendant,
>> but the total amount of damages to which the
>> plaintiff would otherwise be entitled shall be
>> reduced by the percentage that *plaintiff's
>> negligence* contributed as a proximate cause to
>> [his/her] [injury/property damage].  This is
>> known as comparative negligence."  SJI2d 11.01
>> (emphasis added).
>
> The note on use accompanying SJI2d 11.01 states that the
> instruction should be used only where there is a question for
> the jury regrading the negligence of the plaintiff.  Therefore,
> this standard instruction would be appropriate in this case only
> if the evidence showed that Hickey acted negligently in
> harming himself.
>
> In the case before us, the trial court determined that Hickey's
> conduct was intentional, rather than negligent, for purposes of
> applying the standard comparative negligence jury instruction.
> Therefore, because the standard jury instruction should only be
> given when the plaintiff's *negligence* is a partial proximate
> cause of the injuries that occurred, and in this jail suicide case
> the action taken by the decedent was voluntary and *intentional,*
> we find that the standard jury instruction regarding comparative
> negligence was not proper here.
>
> . . . this Court initially accepted the doctrine of comparative
> negligence in *Placek v. Sterling Heights,* 405 Mich. 638, 275
> N.W.2d 511 (1979); see also *Kirby v. Larson,* 400 Mich. 585,
> 256 N.W.2d 400 (1977).  Throughout our analysis, although we
> continuously referred to the application of the comparative
> "fault" of the parties, *Placek,* 405 Mich. at 660-662, 275
> N.W.2d 511; *Kirby,* 400 Mich. at 642-645, 256 N.W.2d 400,
> we also stated that the doctrine only applies when the
> negligence of the plaintiff became an issue in the case.  It is
> doubtful that we envisioned allowing an apportionment of fault
> when a plaintiff undertakes a voluntary and intentional activity
> which causes harm to himself, where a defendant has a duty to

protect that plaintiff from harm, including injury by his own intentional acts.

Zezulka does not dispute that our courts and other jurisdictions do not extend comparative fault analysis to cases where a party acted intentionally in causing harm. Rather than apportioning fault between the parties, one of whom was only negligent and one of whom acted intentionally, courts have placed one hundred percent of the fault on the party whose actions were intentional. Thus, a defendant who intentionally injures a plaintiff is not entitled to mitigation of damages on the basis of the fact that the plaintiff's negligence was also a proximate cause of his injury. See *Vining v. Detroit,* 162 Mich.App. 720, 727, 413 N.W.2d 486 (1987); *Melendres v. Soales,* 105 Mich. App. 73, 82, 306 N.W.2d 399 (1981). . . .

However, as we noted above in section V(A), a jail suicide case presents an exception to the rule that there is no duty to give aid to and protect another person from harm. Therefore, if apportionment of fault is not available, a defendant who negligently causes a person's suicide will bear the full burden of the plaintiff's damages, despite the fact that the plaintiff acted intentionally in harming himself. We must determine, then, if an apportionment of fault is appropriate in such a case.

Zezulka has made no argument to this Court in support of her claim that the trial court erred by refusing to give a comparative fault instruction in this case. The plaintiff notes that Zezulka breached her duty to use ordinary care in protecting Hickey from harm, including his own intentional act of harming himself. The plaintiff argues, then, that it would be nonsensical to allow Zezulka to plead in mitigation of damages the very occurrence she negligently failed to prevent. We agree with the plaintiff that apportionment of fault on the basis of the fact that a plaintiff intentionally harmed himself is not appropriate in a jail suicide case.

*Hickey,* 487 N.W.2d at 120-21.

Only three justices joined in the above quoted first opinion.

The majority of the Michigan Court joined in a partial dissent which stated:

. . . Where a plaintiff intentionally commits an act that brings about an injury, the risk of which was increased by the defendant's negligence, the plaintiff ordinarily loses any cause of action he might have because of defendant's negligence. Where, however, the defendant assumes a duty to protect the plaintiff from that injury, as in this involuntary custody situation, I agree that the plaintiff should not lose his cause of action. I disagree, however, that the other extreme should be adopted - that the defendant then assumes all responsibility, and liability, for injuries that the plaintiff intentionally commits

-10-

> upon himself.  The assumption of a duty to protect the decedent while in defendant's custody merely establishes a legal basis of holding defendant negligent.  The mere existence of  a duty does not automatically lead to the conclusion that the decedent's fault should not be considered.  Decedent's fault, or contributing cause of his injury, is his intentional and unreasonable exposure to the danger created by defendant's negligence.  2 Restatement Torts, 2d, §466, p. 511.

*Hickey,* 487 N.W.2d at 123.

As a result, the principal opinion contains the following unusual language:

> Thus, having concluded that Zezulka should have been granted judgment not-withstanding the verdict on the civil rights claim, we direct entry of judgment for Zezulka on that claim.  However, a majority of the Court has found error in the trial court's failure to instruct on comparative fault.  Therefore, we reverse the decision of the Court of Appeals with regard to the negligence claim and remand for a new trial pursuant to MCR 2.611(A)(1)(g), . . . .

*Hickey,* 487 N.W.2d at 122-23.

It therefore appears that the portion of the opinion favorable to appellants is a minority statement, and the statement of the majority is contrary to the contention of appellants.

In *Champagne v. United States,* N.D. 1994, 513 N.W.2d 75, in a suit for negligence of a doctor in failing to prevent the suicide of a mental patient in his custody, it was held that, since the evidence showed that the patient retained enough mental capacity to be responsible for his well being, consideration of comparative fault was proper.

In a similar case, *Tomfohr v. Mayo Foundation,* Minn. 1990, 450 N.W.2d 121, the patient was found to lack the capacity to care for himself, and comparative fault was not considered.

In *McNamara v. Honeyman,* Mass. 1989, 546 N.E.2d 139, the deceased committed suicide in a mental hospital.  The majority opinion found that the deceased lacked mental

capacity to be responsible for her actions and held that comparison of fault was inappropriate.

However, the same opinion states:

> Mentally ill people who are capable of forming an intent and who do actually intend an act that causes damage will be held liable for that damage. (Citing authority.) It follows that a mentally ill person can be comparatively negligent in some circumstances.

In *Cowan v. Doering*, N.J. 1988, 545 A.2d 159, a mental patient jumped from a second story window. She sued the hospital employees and doctor for negligence. The Supreme Court affirmed judgment for the plaintiff, but said:

> Contributory negligence of a mentally disturbed plaintiff, though not expressly treated in our decisional law, has been the subject of debate within many jurisdictions. The modern trend appears to favor the use of a capacity-based standard for the contributory negligence of mentally disturbed plaintiffs. W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 32, 178 n. 39 (5th ed. 1984). This standard tolerates a reduced standard of care for such persons. It measures the conduct of a mentally disturbed plaintiff in light of his or her capacity. *See e.g., DeMartini v. Alexander Sanitarium,* 192 Cal.App.2d 442, 13 Cal.Rptr. 564 (1961); *Emory University v. Lee,* 97 Ga. App. 680, 104 S.E.2d 234 (1958); *Noel v. McCaig,* 174 Kan. 677, 258 P.2d 234 (1953); *Mochen v. State,* 43 A.D.2d 484, 352 N.Y.S.2d 290 (1974); *Feldman v. Howard,* 5 Ohio App.2d 65, 214 N.E.2d 235 (1966), rev'd. on other grounds, 10 Ohio St.2d 189, 226 N.E.2d 564 (1967); *Warner v. Kiowa County Hospital Authority,* 551 P.2d 1179 (Okla.App. 1976).

> . . . .

> We thus agree with the appellate Division's explanation of the capacity-based standard. This standard recognizes that a mentally disturbed plaintiff is not capable of adhering to a reasonable person's standard of self-care, but at the same time holds that plaintiff responsible for the consequences of conduct that is unreasonable in light of the plaintiff's capacity. In effect, this rule permits the application of a flexible reduced standard of care; it does not eliminate contributory negligence. Thus, in a case in which an accident involves an apparently negligent plaintiff who is mentally disturbed, contributory negligence is an issue that should be determined under the capacity-based standard.

*Cowan,* 545 A.2d at 163.

-12-

Appellants urge this Court to impose absolute liability upon the defendant County pursuant to a public policy to be declared by this Court. This Court does not fix or declare public policy which is enunciated by the Legislature or the Supreme Court.

Traditionally, the very commission of self-injury or suicide has been regarded as the result of some abnormal condition of mind, but the extent of the abnormality and the competency of the actor remains a fact question in the determination of the degree of "fault" of the actor.

The Trial Judge sitting without a jury, determined the degree of fault of the deceased. On appeal, his determination is presumed correct unless the evidence preponderates otherwise. Whatever the exact percentage of fault, the evidence does not preponderate against a finding that the "fault" of deceased was at least 50% of the cause of his suffering and death. The painstaking preparations for departure and a seven page note to his parents forgiving them for failing to warn of his impending arrest, and outlining details of his funeral and disposition of his possessions are circumstances reflecting upon the mental capacity of deceased.

Even if it should be shown that the deceased suffered some pain after 11:45, his deliberate fault was at least 50% of the cause of the pain for which his survivors may not recover under the rule announced in *McIntyre v. Ballentine.*

The foregoing renders unnecessary any discussion of appellants' second issue regarding the appropriate damages in event comparable negligence was determined to be inapplicable.

The judgment of the Trial Court dismissing the suit of plaintiffs is affirmed. Costs of this appeal are taxed against the appellants. The cause is remanded to the Trial Court for necessary further proceedings. -14-

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE, CONCURS

WILLIAM C. KOCH, JR., JUDGE, FILES
SEPARATE CONCURRING OPINION